UNITED STATES of America, Plaintiff–Appellee,

v.

Brian A. BRANCH, Defendant–Appellant.

No. 98–2793.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1998.

Decided Oct. 28, 1999.

Thomas Edward Leggans (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, Amanda A. Robertson, Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee.

Melissa A. Day (argued), Office of the Federal Public Defender, Benton, IL, for Defendant–Appellant.

Before COFFEY, ROVNER, and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

Brian A. Branch ("Branch") pleaded guilty to two counts of distributing "a mixture and substance containing cocaine base, commonly known as crack cocaine." *See* 21 U.S.C. § 841(a)(1). Branch appeals his sentence, arguing that the district court erred in three of its sentencing determinations. Initially, he challenges the court's finding that the substance he distributed was crack cocaine other than some other form of cocaine base. Secondly, he contends that the court erred by increasing his base offense level for obstruction of justice and thirdly, he argues that the court erred when it denied him a downward adjustment for acceptance of responsibility. We affirm.

## I. BACKGROUND

Branch was the subject of a drug investigation undertaken by the Murphysboro, Illinois, police as well as agents of the Federal Bureau of Investigation ("FBI") and other federal agencies. With the aid of a confidential informant ("CI") who made controlled purchases, these law enforcement agencies undertook to investigate the distribution of crack in Murphysboro. On December 8, 1997, Branch entered the CI's vehicle and sold the CI cocaine weighing 0.4 gram. Two days later, Branch again entered the CI's vehicle—this time, Branch asked for the CI's help in retrieving his car from Missouri. As payment for the CI's assistance, Branch gave him two bags of cocaine; their contents weighed 1.5 grams and were worth approximately $350.

Branch was arrested almost a month later on January 5, 1998. Several days after his arrest, a grand jury in the South-

ern District of Illinois returned an indictment which stated that on December 8, 1997, and December 10, 1997, Branch "did knowingly and intentionally distribute a mixture and substance containing cocaine base, commonly known as 'crack cocaine,'" in violation of 21 U.S.C. § 841(a)(1). In March 1998, Branch entered a plea of guilty without a plea agreement to both counts. Before accepting the pleas, the trial judge confirmed in his own mind that Branch understood the implications of his guilty pleas. After he accepted the pleas, the judge set sentencing for June 16, 1998.

In the Presentence Investigation Report ("PSR") filed with the court, the probation officer evaluated Branch's relevant conduct and concluded that he was responsible for distributing between 5 and 20 grams of crack cocaine. She based this finding, in part, on information from interviews that investigating agents had conducted with the CI and with a person known as Taneesha Mandley ("Mandley"), a cooperating source. The CI advised the agents that he had purchased roughly 2.0 grams of crack cocaine from Branch since November 1997. Based on Mandley's statement to agents that Branch sold her crack cocaine twice a week for at least six months,[1] the probation officer estimated that Branch sold a minimum of 4.8 grams of crack cocaine to Mandley. Because Branch's offense level was based on his distribution of 5 to 20 grams of crack cocaine, the probation officer began from a base offense level of 26. *See* U.S.S.G. § 2D1.1(a)(3), (c)(7), Note D to Drug Quantity Table. Beyond that, she recommended only one adjustment—a three-level reduction for Branch's "clearly demonstrated" acceptance of responsibility. Thus, the PSR calculated Branch's base offense level as 23, with a criminal history category III, and a sentencing range of 57 to 71 months.

Branch's sentencing hearing occurred in two parts. The initial phase was held on June 16, 1998, and at that hearing Branch confirmed his pleas of guilty to the two counts listed in the indictment. He also answered "yes" when asked by the court if he had sold "crack" to Mandley. After these preliminary statements, the district court continued the hearing until July 7, 1998, because during the sentencing hearing Branch seemed to become confused. Despite prior confirmations of his plea at his change of plea hearing and earlier in the June 16 hearing, Branch began to object for the first time to the information set forth in the PSR regarding his relevant conduct. Two weeks after the postponement, Branch wrote a letter to the sentencing judge, in it stating that he distributed powder cocaine, not crack cocaine.

The day before the hearing resumed, Branch's counsel filed his objections to the PSR. His two objections were as follows: 1) the probation officer erroneously attributed 5 to 20 grams of crack to him because that amount was derived from unreliable information from the CI and from Mandley; and 2) the probation officer erroneously found that the substance he distributed qualified as "crack" as defined by the sentencing guidelines.

At the continuation of the sentencing hearing in July, both parties offered evidence. Branch reiterated his objections to the PSR, and decided to testify. The government offered the testimony of two veteran drug enforcement agents regarding Branch's drug dealings. It also presented as three exhibits the plastic bags containing the cocaine that Branch had distributed to the CI. Though not offered into evidence, a lab report, produced by an Illinois State Police Crime Lab forensic chemist, was referred to by both parties throughout the hearing. However, neither in these references nor anywhere else in the record, was there any mention of the quantity of cocaine base present in the cocaine Branch distributed.

---

1. During Branch's sentencing hearing, a sergeant with the Murphysboro Police Department testified that he had found information provided by Mandley to be reliable.

Branch admitted in his testimony that he had pleaded guilty to distributing "crack" cocaine. However, he explained that he thought he was pleading to charges of distributing an illegal substance and not to distributing a specific substance. He said that, although he did not know the chemical makeup of the substance he distributed, it was "supposed to be" powder cocaine. Nonetheless, he admitted that he thought the substance was some form of cocaine base, and not powder cocaine. Further, he acknowledged that laboratory analysis of the substance indicated that cocaine was present as the base. Branch described the form and appearance of the substance he distributed as "like powdery, like rock, like half and half." He stated that when selling it he represented it as cocaine, and not as crack cocaine, to his buyers. But he acknowledged that crack cocaine can be ingested by smoking it, and he conceded that, if somebody approached him and asked for something to smoke, he would sell the buyer the same cocaine like that he was arrested for distributing. Finally, Branch testified that Mandley inaccurately told investigating agents that she bought crack cocaine from Branch during each week of the last six months of 1997. Branch stated that for nearly forty days during the last six months of 1997, he had been incarcerated in the county jail for offenses not related to this cocaine conviction.

The government called FBI agent Brenn H. Tallent ("Tallent") and Sergeant Timothy Legere ("Legere") of the Murphysboro Police Department. Tallent was the case agent assigned to the investigation of Branch. He stated that he had worked on more than 100 crack cocaine cases, as well as on "numerous" cases dealing with powder cocaine. He testified that crack cocaine is typically a "hard, rock-like" substance. When asked about the government's exhibits—the cocaine the CI received from Branch in the controlled transactions—he opined that all three of them were crack cocaine. Further, he testified about his conversation with the Illinois State Police Crime Lab forensic chemist who analyzed the three exhibits. Tallent stated that the chemist had confirmed not only that all three exhibits contained cocaine as the base, but that they were examples of what is commonly referred to "in the street term as crack cocaine." Relying on his knowledge and his conversation with the chemist, Tallent explained that cocaine base is different from powder cocaine because cocaine base is powder cocaine mixed with "some other substance." He concluded that "no matter what it's made with, it's cocaine base or crack cocaine."

Legere, a sergeant with the Murphysboro Police, was involved in the controlled transactions between Branch and the CI and he participated in the debriefing of Mandley. Furthermore, he has been involved in over 100 controlled transactions in the Murphysboro area. Legere testified that drug enforcement authorities participating in the investigation in Murphysboro "received no information that [Branch] sold powder cocaine, only crack." He further testified that the CI informed him that the CI's plan was to buy crack cocaine from Branch. In addition, Legere stated that the CI has been cooperating with law enforcement authorities in the Murphysboro area for more than two years. Legere observed that during this period, the CI's information "always" has been reliable, that the CI doesn't use powder cocaine, and that it would be "uncommon" for the CI to purchase it. Regarding Mandley, Legere said that she was not only a cocaine dealer and a user, but was also known as a purchaser of crack cocaine from known dealers. He commented that her information had also proven reliable in the past. He testified that she told him she purchased crack cocaine from Branch at least twice a week over a six-month period.

The district court adopted the findings and recommendations of the PSR, except as they regarded the reduction for accep-

tance of responsibility. The court found that the police laboratory finding—mentioned by both Branch and Tallent—that the substance Branch distributed was cocaine base, was "not disputed." Further, the court observed that the sentencing guidelines label as "crack" a certain type of cocaine base, "usually appearing in a lumpy, rock-like form." After viewing the exhibits, the court found that they were "pretty good chunks" of cocaine base in a "lumpy rock-like form." After noting that if something "[l]ooks like a duck, it's a duck," the court concluded that the exhibits looked "like crack cocaine, and the Court finds that it is crack cocaine."

Next, the district court increased Branch's base offense level by two points, finding that Branch had obstructed justice by committing perjury at the sentencing hearing. The court found "false" both Branch's denial that he sold crack cocaine and his assertion that he didn't sell Mandley as much crack cocaine as she claimed. Further, the court found Branch "very evasive" and "untruthful" in many of his answers regarding the substance that he distributed.

The court also refused Branch any reduction for acceptance of responsibility, finding that Branch had falsely denied "the relevant conduct for which he is accountable." After considering this relevant conduct and finding that the information that Mandley and the CI conveyed to agents was credible, the court found Branch distributed at least 9.1 grams of crack cocaine. After the two-level increase for obstruction of justice, Branch's offense level was 28 and his criminal history category was III. Thus, his sentencing range was 97 to 121 months. The court sentenced Branch to 121 months of imprisonment and three years of supervised release on each of the two counts, all terms to be served concurrently. In addition, the court ordered him to pay a $400 fine and special assessments totaling $200.

## II. ISSUES

Branch requests that we remand his case for resentencing, alleging that the district court clearly erred in three of its sentencing determinations. On appeal, we consider the following issues: 1) whether the district court properly determined that the substance that Branch distributed was crack cocaine; 2) whether the district court erred when it determined that Branch had obstructed justice with his testimony at his sentencing hearing; 3) whether the district court erred when it denied Branch a reduction for acceptance of responsibility.

## III. DISCUSSION

### A. Crack Cocaine v. Other Forms of Cocaine Base

Branch argues that the district court erred in sentencing him under U.S.S.G. § 2D1.1(c) because the government failed to establish, by a preponderance of the evidence, that the controlled substance involved in his offenses was in fact crack cocaine, as opposed to some other form of cocaine base. We review the district court's finding of fact for clear error. *United States v. Mattison*, 153 F.3d 406, 412 (7th Cir.1998). Findings of fact are clearly erroneous only if they are "without foundation in the evidence." *United States v. Bradley*, 165 F.3d 594, 595 (7th Cir.1999) (citation omitted). We review de novo the district court's interpretation of the sentencing guidelines. *United States v. Lezine*, 166 F.3d 895, 905 (7th Cir.1999).

The sentencing guidelines explain that " '[c]rack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c), Note D to the Drug Quantity Table. Crack cocaine is cocaine base, though not all forms of cocaine base are crack cocaine. *See United States v. Earnest*, 129 F.3d 906, 915 (7th Cir.1997);

*United States v. Adams*, 125 F.3d 586, 590–91 (7th Cir.1997); *United States v. Abdul*, 122 F.3d 477, 478–80 (7th Cir.1997).

▪ Branch has reason to be concerned about the correct identification of what he distributed. Penalties for dealing in crack cocaine are frequently more severe than those for other forms of cocaine. The sentence for possessing one ounce of crack cocaine is the same as that for possessing 100 ounces of powder cocaine. *See Earnest*, 129 F.3d at 915; *Adams*, 125 F.3d at 590. Thus, in order for the crack guideline to apply, the government must prove by a preponderance of the evidence that the substance at issue is crack, and not some other form of cocaine base. *United States v. Joiner*, 183 F.3d 635, 640 (7th Cir.1999); *Mattison*, 153 F.3d at 412; *United States v. Valenzuela*, 150 F.3d 664, 667 (7th Cir.1998); *Adams*, 125 F.3d at 592.

▪ Despite his counsel's attempts at oral argument to characterize it otherwise, Branch's challenge to the district court's "crack cocaine" finding comes down to his contention that he should not be held responsible for distributing a substance that laboratory chemical analysis has not conclusively determined to be crack cocaine. His argument fails and it would even if we were to accept his claim that the cocaine was powder; for, under the preponderance of evidence standard, the government must show only "more likely than not" that the substance Branch distributed was crack cocaine. *See United States v. Saulter*, 60 F.3d 270, 280 (7th Cir.1995). Branch overlooks two important features of how the evidence presented in his case was sufficient to establish that he distributed crack cocaine. First, it is the sentencing judge alone who, based upon the evidence received, decides the identity and quantity of the drug distributed in an offense. *United States v. Edwards*, 105 F.3d 1179, 1180 (7th Cir.1997). Here, the judge made a specific finding that Branch distributed 9.1 grams of crack cocaine. Second, in making these findings, he considered the credibility, knowledge, and experience of the witnesses and determined the reliability of a permissibly-broad range of evidence, including hearsay. *United States v. Hardamon*, 188 F.3d 843, 849–50 (7th Cir.1999); *United States v. Robinson*, 164 F.3d 1068, 1070 (7th Cir.1999); *United States v. Miner*, 127 F.3d 610, 615 (7th Cir.1997); *United States v. Edwards*, 115 F.3d 1322, 1326 (7th Cir.1997).

Branch pleaded guilty to an indictment that charges he distributed "a mixture and substance containing cocaine base, commonly known as crack cocaine." At his change of plea hearing, the court consistently referred to the drugs Branch was charged with distributing as "crack cocaine." Consistent with the indictment, the government, at the change of plea hearing, referred to the substance as "crack cocaine" throughout its presentation of the facts it would present if Branch's case were to proceed to trial. Further, Branch answered "yes" when asked by the district court if the facts presented by the government were "essentially correct."

At the initial phase of the sentencing hearing, Branch not only confirmed that he pleaded guilty to the counts listed in the indictment, but also agreed that he had sold "crack" to Mandley. At the July continuation of that hearing, Branch admitted distributing cocaine base. During that hearing, the court not only viewed the cocaine, but also was presented with information from people who were familiar with crack cocaine: Branch—an admitted drug seller; Agent Tallent and Sgt. Legere—two veteran drug enforcement agents; the CI and Mandley—experienced drug users and buyers. *See Bradley*, 165 F.3d at 596 (people who use or transact crack "are the real experts on what is crack"). The district court found credible and reliable the information from each of these sources, except for Branch. Since the sentencing judge found that Branch was not credible and had not testified reliably, Branch's own testimony certainly did not contradict

the witnesses's testimony concerning the evidence of crack cocaine.

Branch argues at length that the July sentencing hearing was marked by error because the sentencing judge, the government's counsel, and FBI agent Tallent made statements that seemed to be based on the erroneous assumption that all forms of cocaine base were crack cocaine. Branch argues that because of the mistaken beliefs held by these parties, the sentencing proceedings were confused and resulted in an improper sentence. It is undisputed that what Branch distributed was not merely cocaine, but in reality cocaine base. At least five people with a vast amount of experience in dealing with crack cocaine—two credible witnesses who testified at the sentencing hearing,[2] and three other credible witnesses who did not testify, but whose information was presented at the hearing—identified the substance as crack cocaine. Thus, we are convinced from the totality of evidence presented that it was clearly established that the substance Branch distributed was crack cocaine. *See United States v. Earnest*, 185 F.3d 808, 812–13 (7th Cir.1999); *Valenzuela*, 150 F.3d at 668; *Mattison*, 153 F.3d at 412; *United States v. Story*, 137 F.3d 518, 521 (7th Cir.1998); *Earnest*, 129 F.3d at 917. Accordingly, the district court did not err in sentencing him under § 2D1.1.

*B. Obstruction of Justice*

■ Section 3C1.1 of the sentencing guidelines instructs the sentencing court to increase a defendant's base offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing" of the offense. U.S.S.G. § 3C1.1.

■ Branch argues that the district court erroneously found that he obstructed

justice by committing perjury. Branch acknowledges that there were inconsistencies in his statements to the district court. However, he contends that these inconsistencies were neither willful, nor related to material matters. He argues that the inconsistencies arose because of the following: his confusion about the differences between crack cocaine and cocaine base; his frustration about Mandley's inaccurate statements regarding the volume and frequency of her drug buys from him; and his insistence that the government meet its burden of proof on these issues. We review the district court's factual finding on the issue of obstruction for clear error. *See United States v. Mancillas*, 183 F.3d 682, 709 (7th Cir.1999).

■ We find no merit in Branch's contentions largely because we defer to the district court's credibility determination that Branch's statements at his sentencing hearing were less than truthful. Because he presided over the proceedings, the sentencing judge is best able to judge the credibility of witnesses who testify before him.

The reasons for this deferential standard of review are well-established. Congress has mandated this standard of review in sentencing and stated that "the court of appeals *shall* give due regard to the opportunity of the district court to judge the credibility of the witnesses, and *shall* accept the findings of fact of the district court unless they are clearly erroneous and *shall* give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (emphasis added). As a matter of sound jurisprudence, we do not second-guess the sentencing judge because he or she has had the best "opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and

2. One of these witnesses, FBI agent Tallent, testified about the conversation he had with the forensic chemist who analyzed the substance Branch had distributed to the CI. Tallent explained that the chemist told him that the substance was in the form "commonly referred to in the street term as crack cocaine."

responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements," as well as confused or nervous speech patterns *in contrast with merely looking at the cold pages of an appellate record. United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir.1993) (quotation omitted).

On numerous occasions, we have held that the clearly erroneous standard applies to estimates of drug quantities made for sentencing purposes because "the district court, as the trier of fact, not only has the authority but is in the best position to determine the amount of narcotics attributable to the [defendant]." *Id.* at 1502; *see also United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir.1994), *cert. denied*, [514 U.S. 1100, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995)]; *United States v. Robinson*, 30 F.3d 774, 785 (7th Cir.1994); *United States v. Mumford*, 25 F.3d 461, 467 (7th Cir. 1994).

*United States v. Garcia*, 66 F.3d 851, 856 (7th Cir.1995).

■ From our review of the proceedings, we can well understand the sentencing judge's finding that Branch's testimony was perjurious. When the judge applied the § 3C1.1 enhancement, he stated:

> [T]his defendant fell on the sword when he took the stand. He's committed perjury.... At one point he thought he was selling powder cocaine. Then he said, well, it was cocaine base, but he didn't know it was crack. He was very evasive in his answers, untruthful in his answers to many questions.... The Court believes he knew what he was selling.
>
> Further, this Court believes that his denial of relevant conduct as relates to Taneesha Mandley is false, and the Court finds he committed perjury in that regard.

When imposing a § 3C1.1 enhancement, the district court should state that it has found all of the elements of perjury: "'falsity, willfulness, and materiality.'" *United States v. Brimley*, 148 F.3d 819, 823 (7th Cir.1998) (citation omitted). Obviously it is most helpful, as in this case, that the sentencing judge highlighted the testimony it found false. Further, the court's statements evince a finding that Branch's testimony was intentionally false, rather than a result of confusion, mistake or faulty memory. *See* U.S.S.G. § 3C1.1, comment. (n.1); *United States v. Dunnigan*, 507 U.S. 87, 94–95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); *United States v. Gage*, 183 F.3d 711, 716–17 (7th Cir.1999). Finally, the court referred to the materiality of Branch's inconsistent statements. The type of cocaine Branch distributed as well as the scope of his relevant conduct were issues central to the sentencing in this case. *See* U.S.S.G. § 3C1.1, comment. (n.5) (1997) (statement "material" if, when believed, it would "tend to influence or affect the issue under determination").

■ The § 3C1.1 enhancement is proper if there is a "real and demonstrable connection between the obstructive conduct and ... the sentencing of the 'instant offense.'" *United States v. Perez*, 50 F.3d 396, 399 (7th Cir.1995). Branch obviously was seeking to avoid the harsher sentence for dealing crack cocaine. With specificity, the district court found that Branch committed perjury. Accordingly, the court did not err when it imposed a two-level increase for obstruction of justice.

### C. Acceptance of Responsibility

■ Section 3E1.1 of the sentencing guidelines directs the sentencing court to decrease a defendant's offense level by two if he "clearly demonstrates acceptance of responsibility for his offense." *See* U.S.S.G. § 3E1.1 (a). Moreover, the court should decrease the offense level by another level if: (a) the offense level prior to any acceptance of responsibility adjustment is 16 or greater; (b) the defendant has timely provided complete information to the government concerning his involve-

ment in the offense, or has timely notified authorities of his intention to enter a guilty plea. *See* U.S.S.G. § 3E1.1 (b). We review the district court's factual finding of whether a defendant has accepted responsibility for clear error. *See United States v. Fiore*, 178 F.3d 917, 925 (7th Cir.1999).

■ Branch argues that he was entitled to a three-point reduction in base offense level because he "did all that was necessary" to accept responsibility for his offense. Moreover, he contends that, even if we find that he obstructed justice, "extraordinary circumstances," such as the "extreme confusion of the proceedings" and the "unique nature" of the distinctions between crack cocaine and cocaine base, entitle him to receive the reduction. Though acknowledging that events at his sentencing hearing can affect the court's acceptance of the PSR's recommendation, Branch contends that he "did nothing to justify" the court's denial of these points. In fact, he argues that he accepted responsibility even though the court determined that he obstructed justice. We disagree.

■ The entry of a guilty plea does not automatically confer a right to a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n.3). The determination of whether the defendant warrants the reduction is context-specific, and thereby subject to the discretion of the sentencing judge, who is in a "unique position" to evaluate whether the defendant accepted responsibility. *See id.*, comment. (nn.5, 6). We have previously determined that the district court properly imposed an enhancement for obstruction of justice; therefore, Branch is presumed not to have accepted responsibility. *See United States v. Ewing*, 129 F.3d 430, 435 (7th Cir.1997) (citation omitted). Nonetheless, though rare, it is not impossible for a defendant who obstructed justice to also have accepted responsibility. *See* U.S.S.G. § 3E1.1, comment. (n.4).

Branch's is not the exceptional case. *See Ewing*, 129 F.3d at 435 (7th Cir.1997);

*United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir.1993); *United States v. Jones*, 983 F.2d 1425, 1434 (7th Cir.1993). Branch presumes that by pleading guilty he has demonstrated acceptance of responsibility. The district court found otherwise and we agree. The court properly concluded that Branch had been untruthful and evasive about what he distributed and about the extent of his relevant conduct. That was enough to warrant denying Branch the acceptance ,points. *See* U.S.S.G. § 3E1.1, comment. (n.3) (significant evidence of defendant's acceptance of responsibility includes "truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable"); *Gage*, 183 F.3d at 717; *United States v. Zaragoza*, 123 F.3d 472, 481 (7th Cir.), *cert. denied*, 522 U.S. 923, 118 S.Ct. 317, 139 L.Ed.2d 245 (1997); *United States v. Akindele*, 84 F.3d 948, 957 (7th Cir. 1996). Our courts do not award merit badges for perjurious testimony.

## IV. CONCLUSION

We hold that the district court did not commit error in sentencing Branch. We agree with the district court's finding that Branch distributed crack cocaine, and the court did not err when it calculated Branch's base offense level. Further, considering that the sentencing judge found that Branch had committed perjury at his sentencing hearing, the court did not err when it assigned Branch an upward adjustment for obstruction of justice and denied him a downward adjustment for acceptance of responsibility.

AFFIRMED.