UNITED STATES of America,
Plaintiff–Appellee,

v.

Derrick D. TURNER, also known as D.T., and Joe Nathan Leverette, also known as Fat Dog, Defendants–Appellants.

Nos. 99–1536, 99–1677.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 14, 1999

Decided Feb. 16, 2000

Scott James Campbell (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for plaintiff-appellee.

Stacy Michelle Rice (argued), Madison, WI, for defendant-appellant Derrick Turner.

Paul Barrett (argued), Elkhorn, WI, for defendant-appellant Joe N. Leverette.

Before WOOD, Jr., CUDAHY, and KANNE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

On December 16, 1997, a federal grand jury sitting in the Eastern District of Wisconsin returned a two-count sealed indictment against Derrick Turner, Joe Nathan Leverette, Alfred Reed, Wendy Lee Gallagher, and Samantha Wood. Count one alleged that, from June 1994 until approximately October 1, 1996, the five defendants conspired to distribute and to possess with intent to distribute in excess of five kilograms of cocaine, methamphetamine, and cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count two charged Turner, Leverette, and Reed with possession with intent to distribute cocaine and crack on or about October 1, 1996 in violation of 21 U.S.C. § 841(a)(1). The indictment was unsealed on January 30, 1998, and the five codefendants were apprehended on various dates between January 28, 1998 and July 7, 1998. Ultimately, Reed, Wood, Gallagher, and Leverette entered pleas of guilty to count one of the indictment pursuant to plea agreements with the government. On December 15, 1998, Turner was convicted on both counts of the indictment following a bench trial. Leverette appeals, raising four challenges to his sentence. Turner also appeals, challenging the district court's ruling on his Speedy Trial Act motion, the sufficiency of the evidence, several of the district court's evidentiary rulings, and his sentence.

## I. BACKGROUND

Leverette, also known as "Fat Dog," and Turner, also known as "D.T.," were involved in a wide-spread conspiracy to distribute cocaine powder and crack cocaine. Leverette was based near Los Angeles, California and was identified by witnesses as extremely talented in the process of converting powder cocaine to crack. Turner acted as a distributor of the drugs in the Milwaukee area. Both men were identified as members of the Shotgun faction of the Crips street gang. The drugs at issue in the conspiracy were transported from Los Angeles to cities across the country by couriers. After delivering the drugs, the couriers would return to Los Angeles with large amounts of currency. The conspiracy began to unravel when, on October 1, 1997, two of the couriers, Michelle Proctor and Tia Musarra, were stopped by Milwaukee County law enforcement officials at

the Mitchell International Airport in Milwaukee after disembarking from a commercial airline flight from Los Angeles. After some questioning, the officers searched Proctor and Musarra and discovered four cellophane-wrapped packages of what appeared to be narcotics. The packages were later sent to the state crime lab for analysis and were identified as a combination of crack and powder cocaine. During the search, the officers also seized a piece of paper with "Exel Motel" written on it and an address book containing telephone numbers for "D.T." and "Fat Dog." Proctor later estimated that she was carrying a kilo and a half of drugs at the time she was searched.

Proctor and Musarra entered into cooperation agreements with the government. Pursuant to these agreements, the women aided in the police investigation of the conspiracy and, ultimately, testified against Leverette at an evidentiary hearing and against Turner at trial. Proctor testified about numerous trips from Los Angeles to Milwaukee where she would meet Turner and to Des Moines, Iowa where she met a man named Larry Howard. During these trips, Proctor testified that she transported crack and powder cocaine given to her by Leverette and returned with currency in amounts ranging from $30,000 to $60,000. Proctor's travel expenses were paid, and she was given money for her services when she completed a trip. Musarra also testified about trips that she made from Los Angeles to Milwaukee and Des Moines transporting drugs she received from Leverette and return trips transporting large amounts of currency. The remaining facts of this case are complex, and we will address them as they apply to our analysis.

## II. ANALYSIS

### A. Joe Nathan Leverette

In his plea agreement, Leverette reserved the right to challenge the type and amount of drugs attributable to him for sentencing purposes. After Leverette entered his guilty plea, the court scheduled an evidentiary hearing to determine the type and amount of drugs at issue. The evidentiary hearing was held December 16, 17, and 21, 1998, with both sides presenting witnesses. Leverette's sentencing hearing was held on March 1 and March 12, 1999. On March 1, Leverette's parents, who had traveled to Wisconsin from California for the hearing, were present, and Leverette's father addressed the court. The hearing was then continued at Leverette's request to allow defense counsel time to prepare objections to the presentence report ("PSR"). On March 12, 1999, the district court ruled on Leverette's objections and sentenced him to 360 months imprisonment and a $5,000 fine on count one. Count two of the indictment was dismissed on the government's motion pursuant to the plea agreement.

As previously noted, in his appeal Leverette raises four challenges to the sentence imposed by the district court. Leverette first asserts that the probation officer who prepared his PSR violated the separation of powers doctrine by serving not as a neutral arm of the court but rather as an advocate for the prosecution. Secondly, Leverette contends that the testimony of the witnesses at his sentencing hearing should have been excluded because it was given in violation of the federal anti-bribery statute, 18 U.S.C. § 201(c)(2). Leverette further argues that the district court's determination regarding the type and quantity of drugs attributable to him was erroneous. Finally, Leverette contends that his criminal history calculation under the United States Sentencing Guidelines (the "Guidelines") was based on unreliable information because the district court did not have certified copies of his prior convictions when it sentenced him.

██ Leverette argues that, when the probation officer sits at the government's table in court, as she did in this case, and routinely advocates for the government, the separation of powers doctrine is violated. At sentencing this issue was raised by

defendant's counsel. The prosecutor took issue with defense counsel's remarks about the impartiality of the probation office and asked that counsel raise for the record any specific complaints he might have about the functioning of the probation office in the present case. Defense counsel made clear that he was not making any allegations about the particular probation officer involved but that his allegations pertained to "the entire system that has an appearance of impropriety." Counsel further stated that "it is inappropriate when they (probation officers) become advocates as opposed to fact people." Defense counsel then acquiesced to the prosecutor's summation that his accusations were general in nature and that the probation officer in question "in no way acted as an adversary against the Defendant but maintained her position as an arm of the Court."

Leverette's complaint is general, not specific to his case, and he fails to point to any particular unfairness in the presentence report or the Guidelines recommendations proposed by the probation officer. We do not see in this case that the probation officer acted other than as an arm of the court. There is no separation of powers problem. This view does not mean, however, that the perception could not be otherwise when the probation officer sits in court with the government's counsel at the government's table. The relationship between probation officers and defense counsel has become complicated enough under the Guidelines. J. Vincent Romero, Supervising U.S. Probation Officer for the District of Arizona, has written about the current relationship of these parties and concludes that "the bottom line is that probation officers must gain defense counsel's trust, and defense counsel must not view probation officers as surrogate prosecutors."[1]

Accordingly, we find no error in this instance, but nevertheless suggest to district judges, U.S. Attorneys, and probation officers that steps be taken to prevent the perception that probation officers are "surrogate prosecutors." It may be that a separate small table could be placed to one side inside the rail where the probation officer is equally available to the district judge and to the other parties as needed.

 Leverette's anti-bribery statute argument likewise fails. Leverette contends that the testimony of several witnesses at his sentencing hearing should have been excluded as having been given in violation of the federal anti-bribery statute, 18 U.S.C. § 201(c)(2), because the witnesses testified pursuant to plea agreements in which the prosecution offered them leniency, at least partially in exchange for their testimony against Leverette.[2] We rejected this argument in *United States v. Condon*, 170 F.3d 687 (7th Cir.), *cert. denied*, 119 S.Ct. 1784 (1999), and Leverette does not raise any new arguments, but instead merely states that he disagrees with the recent rulings on the issue. We find no reason to depart from our holding in *Condon* and reject Leverette's anti-bribery statute claim.

 Leverette next argues that the district court erred in its determination of both the type and the quantity of drugs attributable to him for sentencing purposes. We review the district court's factual findings regarding the type and amount of drugs in question for clear error. *United States v. Galbraith*, 200 F.3d 1006 (7th Cir. 2000); *United States v. Branch*, 195 F.3d 928, 933 (7th Cir.1999). We will reverse "only if after reviewing the record, we are left with the firm and definite conviction that a mistake has been made." *Galbraith*, 200 F.3d 1006 (internal

---

**1.** J. Vincent Romero, *The Relationship Between Defense Counsel and the Probation Officer Under the Guidelines,* 2 FED. SENTENCING REP. 312, 314 (1999).

**2.** The federal anti-bribery statute in pertinent part makes it illegal to directly or indirectly give, offer, or promise "anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court." 18 U.S.C. § 201(c)(2).

quotations and citations omitted). For sentencing purposes, the government need only prove the type and amount of drugs by a preponderance of the evidence. *Id.*; *Branch*, 195 F.3d at 934. However, the defendant has a due process right to be sentenced based on reliable information. *Galbraith*, 200 F.3d 1006 (citing *United States v. Lanterman*, 76 F.3d 158, 160 (7th Cir.1996)).

The district court held Leverette responsible for 5,209.75 grams of crack cocaine and 34,779.65 grams of cocaine powder and assigned a corresponding base offense level of 38. See U.S.S.G. § 2D1.1(c)(1) (setting a base offense level of 38 for offenses involving 1.5 kilograms or more of crack cocaine[3]). On appeal, Leverette asserts that the government failed to prove by a preponderance of the evidence that 5,209.75 grams of the drugs attributed to him were crack cocaine rather than some other form of cocaine. Additionally, Leverette contends that, given the inconclusive nature of the witnesses' testimony regarding drug amounts, the district court erred in holding him liable for such a specific amount of cocaine and crack. After reviewing the transcripts from the evidentiary hearing, including Leverette's testimony under seal, it is clear that there is sufficient evidence to justify the district court's determinations as to the type and amount of drugs attributable to Leverette. As the district court noted at sentencing, Leverette testified that the couriers' testimony at the evidentiary hearing was basically correct. Furthermore, in his objections to the PSR, Leverette asked the court to disregard the calculations set forth in the PSR and instead to use the amounts of each type of drug to which Leverette admitted at the evidentiary hearing. However, even if we were to limit the calculation to those amounts, Leverette would still score a base offense level of 38. The district court did not clearly err, and we affirm the district court's base offense level determination.

Finally, Leverette challenges the district court's criminal history determination, arguing that the determination was based on unreliable information because the district court did not have certified copies of three of the prior convictions at the time it sentenced him. The district court calculated Leverette's criminal history to be thirteen points which placed Leverette in criminal history category VI. If the three challenged convictions were excluded, Leverette would have a criminal history score of nine, placing him in criminal history category IV. Because we affirm the district court's ruling regarding Leverette's base offense level and Leverette does not raise any other challenges to his total offense level score, we need not resolve the dispute as to Leverette's correct criminal history category. Given Leverette's total offense level, the Guideline range for criminal history category IV is the same as that for criminal history category VI, 360 months to life. Leverette was sentenced to 360 months imprisonment, the bottom of this range. Any error in the court's criminal history determination was harmless. *See United States v. Howard*, 179 F.3d 539, 545 (7th Cir. 1999) ("As long as it is reasonable to conclude that the same sentence would have been imposed regardless of the outcome of the dispute over which range to apply, we need not resolve the dispute."). Leverette's sentence is affirmed.

**B. Derrick Turner**

Of the five coconspirators named in the indictment, Turner is the only one who did not enter into a plea agreement with the government but instead chose to proceed to trial. Turner waived his right to a jury trial, and following a two-day bench trial, on December 15, 1998, he was convicted on both counts of the indictment. On March 3, 1999, Turner was sentenced to 360 months on each count with the sentences to run concurrently. Turner raises nu-

---

**3.** "Crack" is defined in the Guidelines as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochlo-ride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c) n. D.

merous issues involving his conviction, including a Speedy Trial Act claim, a sufficiency of the evidence claim, and several evidentiary challenges. Turner also disputes the district court's calculation of his sentence.

### 1. Speedy Trial Act

■■■ The Speedy Trial Act provides that criminal defendants must be brought to trial within seventy days of the later of the filing date of the indictment or information or the date of the defendant's first appearance, absent certain allowable delays. 18 U.S.C. § 3161(c)(1). The decision to grant a continuance under the Speedy Trial Act and the accompanying decision to exclude a delay from the Speedy Trial Act computation is left to the sound discretion of the trial court. *United States v. Taylor*, 196 F.3d 854, 860 (7th Cir.1999). Absent legal error, we will affirm the district court's exclusion of time unless the defendant demonstrates both an abuse of discretion by the district court and actual prejudice. *Id.* at 860–61.

Turner and Gallagher were arrested in Los Angeles County, California on January 28, 1998. On February 25, 1998, Turner appeared in the Eastern District of Wisconsin for arraignment.[4] Turner pled not guilty to both of the charges against him, and trial was set for May 4, 1998. Samantha Wood was arrested on March 7, 1998 and arraigned on March 20, 1998. On April 15, 1998, the prosecution moved for a continuance of the trial date until sometime in July 1998 in order to avoid multiple trials because Reed and Leverette had yet to be arraigned. In support of its request for a continuance, the government cited specific portions of the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(B), (h)(3)(A), and (h)(7). The court, stating that its decision was "[i]n the interest of judicial economy and for continuity of trial" and relying on 18 U.S.C. §§ 3161(h)(3)(A)[5] and (h)(7),[6] granted the government's motion, adding that a new trial date would be set upon consultation by the clerk with counsel in the case. Reed was arraigned on June 5, 1998. At this point, Wood had entered a guilty plea, and on June 9, 1998, the court set a trial date for Turner, Reed, and Gallagher of August 24, 1998. Leverette was arrested in Los Angeles on July 7, 1998, and on July 17, 1998, the court rescheduled the trial date to September 21, 1998 for Leverette, Turner, and Reed.[7] Leverette was arraigned in the Eastern District of Wisconsin on July 20, 1998. Based on the government's request that the trial date be moved to accommodate the observance of a religious holiday, the court reset the trial date from September 21 to September 22, 1998.

On August 14, 1998, Turner's attorney, Catherine Canright, made a motion to withdraw from the case because she was moving outside of the district as of September 1, 1998. The court granted Canright's motion and appointed a new attorney, Allen Schatz, to represent Turner. Schatz asked for a thirty-day continuance to allow him time to prepare for the case. The court rescheduled the trial date for Leverette, Reed, and Turner to November 2, 1998. Reed entered into a plea agreement on October 5, 1998, and Leverette's attorney filed a motion to withdraw from

---

**4.** The government in its brief refers to Turner's arrest date as both February 4, 1998 and January 29, 1998. The warrant for Turner's arrest shows an arrest date of January 28, 1998, the date of arrest used by the defendant in his brief. Despite this inconsistency concerning the date of Turner's arrest in California, it is clear that Turner made his first appearance in the Eastern District of Wisconsin on February 25, 1998.

**5.** Section 3161(h)(3)(A) excludes from the Speedy Trial Act calculation "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness."

**6.** Section 3161(h)(7) allows for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."

**7.** By this time, Gallagher had entered a guilty plea.

representing Leverette. On November 2, 1998, the district court denied the motion to withdraw and rescheduled Leverette and Turner's trial date to December 7, 1998 after Turner's counsel indicated that he was ready to proceed to trial that day, but if the case did not begin as scheduled, he could not try the case until December due to scheduling conflicts. On December 3, 1998, Leverette entered into a plea agreement with the government. Turner's trial was rescheduled for December 14, 1998 because of a conflict with a criminal jury trial on the court calendar. On December 14, 1998, before the trial began, Turner made an oral motion to dismiss the indictment based on a violation of the Speedy Trial Act. The court denied the motion and the case proceeded to trial. Turner was tried in a two-day bench trial on December 14 and 15, 1998.

■ Turner did not object at the time the court granted the various continuances, but rather challenged the delay as a whole in an oral motion to dismiss on the day of trial. At that time, the district court examined various delays in the case and determined that they were in the interest of justice. *See* 18 U.S.C. § 3161(h)(8)(B). In his initial brief on appeal, Turner does not challenge specific delays, but rather argues that the court did not make sufficient factual findings to support its "ends of justice" determination regarding "the Government's multiple requests for delaying Turner's trial." In his reply brief, Turner addresses two specific delays; first, the continuance from May 4, 1998 until sometime in July that was granted pursuant to the government's motion and, secondly, a delay between June 4 and August 24, 1998 which, according to Turner was based on a conflict with the court's calendar.[8]

■ The court need not state the reasons for granting a continuance contemporaneously with its continuance orders.

*Taylor*, 196 F.3d at 861. In the present case, however, the court noted in its order continuing the case from May 4, 1998 that the continuance was granted pursuant to 18 U.S.C. §§ 3161(h)(3)(A) and (h)(7) based on the court's findings that codefendant Reed would be arriving in Milwaukee shortly after his release from custody on a misdemeanor charge in California and that attempts were being made to locate Leverette who was still at large. Turner did not move to sever his trial from that of his codefendants, and the district court did not abuse its discretion in excluding the time period up to Leverette's first appearance on July 20, 1997, as this time was properly excludable under 18 U.S.C. §§ 3161(h)(3)(A) and (h)(7). See *United States v. Tanner*, 941 F.2d 574, 580 (7th Cir.1991) ("[U]nder § 3161(h)(7), the excludable delay of one defendant may be ascribed to all codefendants in the same case, absent severance.") (internal quotations and citations omitted). The district court was not required to make an "ends of justice" finding with respect to this time period. Furthermore, to the extent that the alleged scheduling delay does not overlap with the previously discussed continuance, specifically the period from July 20 to August 24, 1998, Turner fails to cite to any portion of the record dealing with this time period. Turner argues that the district court erroneously excluded this time since a court's calendaring conflict is an expressly impermissible exclusion but does not include a citation to the record to indicate when the district court made this erroneous exclusion. Our review of the record reveals that the district judge did not address this time period in his analysis of Turner's motion to dismiss, and there is no evidence that the time in question was excluded from the court's Speedy Trial Act calculation. Because Turner fails to show that the district court abused its discretion in ruling on his Speedy Trial Act claim, we

---

8. Turner does not challenge the district court's decision granting a one-day continuance at the government's request to allow for observance of a religious holiday. This one-day continuance and the continuance from May 4, 1998 are the only two continuances that were requested by the government.

need not consider whether Turner was prejudiced by the delay. Turner's Speedy Trial Act claim fails.

### 2. Sufficiency of the Evidence

 Turner argues that there was insufficient evidence to support (1) a finding that he possessed over five kilograms of cocaine or cocaine base on October 1, 1996 and (2) a finding of gang affiliation. Turner has a high burden to meet to succeed on these claims, since the verdict must be upheld if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Pigee*, 197 F.3d 879, 892 (7th Cir.1999). Turner's arguments merit only brief comment. First, in asserting that the government failed to prove that he possessed over five kilograms of cocaine or cocaine base **"on October 1, 1996"** (emphasis in Turner's brief), Turner confuses count one of the indictment with count two. Count two, which is based on conduct on or about October 1, 1996, alleges only that Turner, Reed, and Leverette "did knowingly and intentionally possess with intent to distribute cocaine and cocaine base, a/k/a 'crack.'" It does not refer to a specific amount of drugs, and in proving count two, the government was not required to prove that Turner possessed in excess of five kilograms of drugs. Turner further contends that the district court "irrationally and unreasonably" used a fifteen-year-old photograph of a group of adolescent boys to support a finding of gang affiliation which was in turn used to help prove the elements of the conspiracy charge. While the district court described the photograph as "one of the most telling" pieces of evidence of gang affiliation, it was not the only evidence. Tia Musarra identified Turner as a member of the Crips although she was unsure whether he was involved with the Shotgun faction. Alfred Reed identified Turner as a member of the Shotgun Crips. The record contains ample evidence of Turner's gang affiliation, and

Turner's sufficiency of the evidence claims fail.

### 3. Evidentiary Issues

 Turner first argues that, based on a sequestration order that was in effect, the district court erred in allowing FBI Special Agent Kathryn Peterson and DEA Special Agent Dave Spakowicz to testify after they sat at the government's table during the testimony of other witnesses. When the prosecutor entered her appearance at the beginning of Turner's trial, she noted that she was joined at counsel table by Spakowicz and Peterson. Several minutes later, when the court and counsel were discussing the procedural aspects of presenting witnesses in the case, the judge stated, "I take it there is going to be a motion to sequester witnesses?" to which defense counsel replied, "Yes, Your Honor." The court then instructed the bailiff to have the witnesses who were in custody brought up from the Marshall's Service and placed in the witness room. No mention was made of the government agents at the time sequestration was discussed, and defense counsel did not object to their testimony on sequestration grounds. Because Turner failed to make a proper objection at trial, we review for plain error. *United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir.1994). Plain error is error that is both clear and prejudicial. *United States v. Olano*, 507 U.S. 725, 734 (1993).

The district court's admission of the testimony of the two agents was not plain error. It is arguable that the district court sequestration order did not apply to the agents because, in response to the motion to sequester witnesses, the court only addressed procedures to deal with in-custody witnesses. Additionally, the agents qualify under Fed.R.Evid. 615(2) as individuals who are exempted from exclusion. *United States v. Crabtree*, 979 F.2d 1261, 1270 (7th Cir.1992); *see also United States v. Berry*, 133 F.3d 1020, 1024 (7th Cir.1998). Turner's jury sequestration claim fails. The remainder of Turner's

evidentiary challenges also are without merit. Turner did not object to the admission of the items at trial, and he fails to show plain error. *See Barker*, 27 F.3d at 1292.

### 4. Sentencing Challenges

Following a two-day bench trial, the district court found Turner guilty on both counts and set Turner's sentencing hearing for February 22, 1999. Turner's sentencing was rescheduled because defense counsel inadvertently failed to submit his objections to the PSR prior to the February 22 hearing. The sentencing was held on March 3, 1999. At sentencing, the district court adopted the calculations set forth in the PSR and sentenced Turner to 360 months imprisonment on each count with the sentences to run concurrently. In reaching this sentence, the district court held Turner responsible for 7,228.15 grams of cocaine powder and 1,150 grams of crack cocaine and set a corresponding base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). The district court applied a three-level upward adjustment under U.S.S.G. § 3B1.1(b) for Turner's aggravating role in the offense. The court then added two offense levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice based on a finding that Turner perjured himself when he testified at trial that he did not know Michelle Proctor or Tia Musarra. After the enhancements, Turner was assigned a total offense level of 41. Based on Turner's criminal history category of II, the district court determined the appropriate Guideline range to be 360 months to life imprisonment and sentenced Turner at the bottom of this range. Turner challenges both his base offense level and the enhancements applied by the district court.

█ Turner first challenges the district court's determination as to the type and amount of drugs that can be attributed to him for sentencing purposes. As previously noted, our review is for clear error, and the government need only prove the type and amount of drugs by a preponderance of the evidence. *Galbraith*, 200 F.3d 1006; *Branch*, 195 F.3d at 933–34. In his initial brief on appeal, Turner argues that the amounts in the PSR were erroneous because they were based in part on the presumption that Turner himself acted as a courier. A review of the PSR calculation of drug amounts (PSR para. 33) reveals no mention of Turner acting as a courier. The PSR expressly states that Turner was being held responsible only for those transactions in which "he received or was to have received cocaine or cocaine base" and outlines the amounts attributable to specific trips by the couriers. Turner also asserts that the drug amount calculation was erroneously based on the assumption that each trip from Los Angeles to Milwaukee resulted in the delivery of at least one kilogram of cocaine despite testimony from codefendants Wood and Reed that much lower amounts had been carried on a specific trip. However, the PSR clearly holds Turner liable for only half a kilogram and nine ounces of cocaine for the transactions involving Wood. Turner's remaining arguments regarding the drug amount calculation were not raised until his reply brief and are, therefore, waived. *United States v. Magana*, 118 F.3d 1173, 1198 n. 15 (7th Cir.1997).[9] Finally, Turner argues, through adoption of Leverette's brief, the district court erred in finding that 1,150 grams of the drugs attributable to him were crack and not some other form of cocaine. Turner's crack cocaine computation was limited to a portion of the drugs seized from Proctor and Musarra. These drugs were submitted to a Wisconsin state crime lab for analysis, and the crime lab employee testified that, after conducting both visual and chemical tests, she determined the portion of the drugs in question was a form of cocaine base commonly known as crack. Leverette's argu-

9. We note that even had Turner's additional challenges been properly preserved, they would have failed. There is sufficient evidence in the record to support the district court's drug amount calculation.

ment regarding the inconclusiveness of the couriers' testimony as to the type of drugs carried does not apply in Turner's case. There was no clear error, and we affirm the district court's decision regarding Turner's base offense level.

 Turner next argues that the district court erred in imposing a two-level increase in his offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. The PSR recommended a two-level enhancement for Turner's allegedly perjured testimony at trial that he did not know Tia Musarra or Michelle Proctor. "Perjury can be the basis for a § 3C1.1 increase, ... but not every instance of false testimony under oath warrants the enhancement." *United States v. Gage*, 183 F.3d 711, 715 (7th Cir.1999) (citations omitted). The § 3C1.1 enhancement applies if a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In his objections to the PSR, Turner argued that he did not perjure himself because he "told the truth to the best of his abilities." Turner did not challenge the materiality of the testimony in question.

 In applying a § 3C1.1 enhancement, "the district court should indicate that it has found all of the elements of perjury: falsity, willfulness and materiality." *United States v. Brimley*, 148 F.3d 819, 823 (7th Cir.1998) (internal quotations and citations omitted). We review *de novo* to determine whether the district court made the appropriate findings to support a § 3C1.1 enhancement. *Gage*, 183 F.3d at 715. If the appropriate findings are made, we review the factual findings underlying the district court's determination that perjury occurred for clear error. *Id.* The district court began by setting out the proper standard, stating "[t]he Court has

to find that the Defendant did lie about a material fact prior to applying this adjustment." The court then made an independent determination that Turner lied about his involvement with Musarra and Proctor. The court based this determination on a finding that Turner's testimony was so diametrically opposed to that of the other witnesses that one version had to be a lie. The court credited the version of facts set out by the other witnesses, noting that this version was supported by other evidence in the case including travel records and the presence of Turner's nickname in Musarra's address book. Given these findings, it is clear that the district court concluded Turner's testimony was intentionally false and not the result of confusion or faulty memory. *See Brimley*, 148 F.3d at 824. This finding is not clearly erroneous.[10]

Turner further asserts that the district court erred in applying a three-level enhancement under U.S.S.G. § 3B1.1(b) because there was no evidence that he played a managerial role in the conspiracy. However, in his objections to the PSR, Turner conceded his managerial role, stating that the district court could find him to be a manager or supervisor of criminal activity involving less than five individuals pursuant to U.S.S.G. § 3B1.1(c), but challenging the finding that Wendy Gallagher was involved in the criminal activity. Given this concession and the fact that, on appeal, Turner does not contest Gallagher's involvement in the conspiracy, we find that the district court did not clearly err in increasing Turner's offense level pursuant to U.S.S.G. § 3B1.1(b). *See United States v. House*, 110 F.3d 1281, 1283 (7th Cir. 1997) (stating that a defendant's role in the offense is a factual finding reviewed for clear error). Additionally, to the extent that Turner adopts Leverette's anti-bribery statute claim and his separation of powers argument regarding the probation office, we reject Turner's claims for the reasons set forth in our analysis of those

10. Because Turner does not challenge the materiality of the statements in either his initial

or reply brief, we do not address the issue.

issues above. Turner's sentence is af-firmed.

### III. CONCLUSION

Leverette's sentence is affirmed. Turner's conviction and sentence are affirmed.