In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2963

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LAWRENCE E. SIMMONS, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98 CR 30155--William L. Beatty, Judge.

Argued February 18, 2000--Decided JUNE 27,
2000

   Before Posner, Chief Judge and Bauer and
Manion, Circuit Judges.

   Bauer, Circuit Judge.  Lawrence E.
Simmons, Jr. ("Simmons") appeals the
sentence he received after pleading
guilty to a series of drug and firearm
offenses. He challenges the quantity of
cocaine used by the District Court in
calculating his base offense level under
the Sentencing Guidelines, the disparity
between his sentence and his co-
conspirator's sentence, and the limited
reduction he received for acceptance of
responsibility, claiming he should have
received an additional level. Having
reviewed the sentence and the evidence
and finding no error, we affirm the
District Court.

I.  BACKGROUND

   On September 23, 1998, Simmons was
charged in seven counts of an eleven
count indictment. The charges against him
included conspiracy to distribute cocaine
and crack cocaine, possession with intent
to distribute cocaine and crack cocaine,
being a felon in possession of a firearm
and four counts of distributing crack
cocaine. He was indicted along with his

co-conspirator, Sandra Michelle Dixon ("Dixon").

The charges arose out of the activities of an "organization" run by Simmons. Simmons bought quantities of powder cocaine and later converted it to crack cocaine for sale when he or one of his aides received an order. The group operated out of motels, moving from one to another whenever they felt the authorities were "on" to them. Their luck ran out on August 25, 1998, appropriately, at the Trails End Motel. The group was arrested, and drug paraphernalia, more than $500.00 in cash, and a .38 caliber pistol were seized.

Dixon accepted a plea agreement from the government and pleaded guilty to the charges against her. In exchange for her cooperation and testimony, the government agreed not to seek an enhanced sentence against Dixon pursuant to 21 U.S.C. sec.851. She was sentenced to 108 months imprisonment.

The government did file an information charging prior offenses against Simmons, subjecting him to the enhanced penalty provisions of 21 U.S.C. sec.841(b). And, although he made a written statement implicating himself in the conspiracy shortly after his arrest, Simmons did not plead guilty until April 6, 1999, the day his trial was scheduled to begin, after five previous continuances were granted upon defense requests. There was no plea agreement between Simmons and the government.

Detective Clark of the St. Clair County Sheriff's Department testified for the government at Simmons' sentencing hearing. The government also submitted 14 written statements from various individuals, including the defendant, Dixon and some of their customers. After considering all of the evidence and the findings in the Presentence Investigation Report, the District Court made findings of relevant conduct, including the attribution of 72.66 grams of cocaine to Simmons, and determined his offense level to be 32. It granted Simmons a two level reduction (out of a possible three) for acceptance of responsibility since he had pleaded guilty, and sentenced him to a term of 240 months imprisonment on the drug charges and a concurrent term of 120

months on the firearms charge. Simmons was also ordered to pay a fine of $2,450.00 and a special assessment of $700.00.

## II. DISCUSSION

### A. Calculation of Drug Amounts for Sentencing

On appeal, Simmons challenges the District Court's determination that he was responsible for 72.66 grams of cocaine. He argues that the District Court credited "unreliable" evidence when calculating the quantity of cocaine for which is he is accountable under the Sentencing Guidelines. We review the District Court's drug quantity determination for clear error, United States v. Johnson, 200 F.3d 529, 537 (7th Cir. 2000); United States v. Branch, 195 F.3d 928, 933 (7th Cir. 1999), and will affirm the District Court's decision unless, after reviewing all of the evidence, "we are left with the firm conviction that a mistake has been committed." Johnson, 200 F.3d at 537.

Simmons' principal complaint is that the District Court erred in relying on the written statement of Aramy Carter ("Carter") to support the amount of cocaine attributable to him. Carter's statement was used by the court to attribute 42.52 grams of crack cocaine (approximately 58% of the total relevant conduct) to Simmons. He contends thatCarter's statement strains credibility and is unreliable because Carter did not testify in open court.

The government presented only one live witness at the sentencing hearing. That witness, Detective Clark of the St. Clair County Sheriff's Department, testified to the investigation into the defendant's organization and the controlled buys of cocaine made between May, 1998 and August, 1998. He also testified to the statements taken from the defendant, his co-conspirator Sandra Dixon, and seven customers.

Aramy Carter was one of the customers whose statements were presented to the District Court./1 In his statement, Carter said that he had seen Simmons "with  ounce 3 to 4 times and each time [Simmons] would rock it up when we got

ready to smoke it." Converted into grams, Carter's statement says that he saw Simmons with 42.52 grams to 56.7 grams of cocaine.

Simmons admits selling cocaine to Carter. Indeed, his own statement says that he sold Carter "some 20s rock [$20 worth] of crack cocaine." The government argues that this admission bolsters the credibility of Carter's statement because it shows a relationship between the two men and explains how Carter could have seen Simmons with those amounts of cocaine on those occasions. Simmons, however, combines the two statements and argues that they demonstrate the unreliability of Carter's statement. He posits that if the 42.52 grams are attributable to him, and a $20.00 piece of crack cocaine equals 0.2 grams (as the Presentence Investigation Report tells us it does), that must mean he sold Carter crack cocaine 212.6 times, or approximately two and a half to three and a half times every day during the two to three months they had known each other.

The argument, presented in this manner by Simmons, does suggest that Carter's statement is implausible and thus unreliable. But, Simmons' argument misreads Carter's statement: Carter did not say that Simmons sold him that amount of cocaine, he merely said that he saw Simmons with that amount of cocaine. Simmons' reading, we think, perverts the meaning of Carter's statement and we decline to read it in the manner he suggests.

We are further persuaded as to the reliability of Carter's statement by the corroboration found in the statements of the other customers and associates of Simmons. Carter said that, on occasion when he was with Simmons, Simmons would get "beeped" and then leave, carrying his cocaine in a black bag. This is similar to the defendant's own statement wherein he told of being paged by his customers and either having them come to him at the motel or going to them to complete the drug transaction.

Similarly, there was a significant amount of other evidence regarding the quantity of drugs attributable to the defendant. Detective Clark testified that 23 grams of cocaine were purchased from

Simmons and his aides during the controlled buys, 3.5 grams of cocaine base was seized from Simmons during a traffic stop on May 29, 1998, and 3.6 grams of cocaine base was sold by Simmons on June 12, 1998. Phillip Stanley's statement said that on 30 occasions he purchased crack cocaine from Simmons in $50.00 quantities, totaling approximately 18 grams. Marion Stallings' statement admitted that she purchased $50.00 quantities of cocaine three times (1.5 grams) from one of Simmons' aides. Lizzie Smith's statement said she purchased 2 ounces of crack from Simmons on one occasion and 2 and ounces on other occasions. Mark Wieter's statement told of buying $100.00 of crack cocaine (1 gram) from a Simmons associate. And, finally, Cheryl Helfritch's statement said she bought crack cocaine from Simmons on 15 occasions, in dollar amounts of $50.00 and $20.00 (approximately 3 grams).

The Presentence Investigation Report attributed 84.5 grams of cocaine to Simmons. That amount did not even include the 42.52 grams attributable to Simmons by Carter's statement. Thus, even if we were to discount Carter's statement, there is more than ample evidence on which to affirm the sentence. United States v. Carmack, 100 F.3d 1271, 1276 (7th Cir. 1996) ("we may affirm a sentence on any ground found in the record, regardless of the rationale employed by the district court."). Since there are supported findings of more than 50 grams in the record,/2 we affirm the District Court's finding.

As to his claim that Carter's statement is unreliable because he did not testify personally at the sentencing hearing, there is no requirement that a sentencing court consider only the testimony of non-hearsay witnesses. See 18 U.S.C. sec.3661. Indeed, the District Court may "consider a wide range of information so long as it has a sufficient indicia of reliability to support its probable accuracy." Johnson, 200 F.3d at 537 (internal quotation marks and citations omitted). Hearsay is admissible at a sentencing hearing as long as the evidence is reliable and the defendant has the opportunity to rebut it. United States v. Payton, 198 F.3d 980, 983 (7th Cir. 1999).

Simmons presented no evidence to counter the Presentence Investigation Report. He merely denied its, and the statement of Carter's, accuracy. That is not enough. United States v. Westbrook, 986 F.2d 180, 183 (7th Cir. 1993) (defendant challenging amount of cocaine specified in presentence investigation report must present some evidence showing that the amount specified is incorrect.). See also United States v. Jones, 209 F.3d 991, 996 (7th Cir. 2000).

In the absence of any actual evidence controverting the Presentence Investigation Report, the testimony of Detective Clark, and the statements of the defendant, his co-conspirator and their customers, we conclude that thesentencing judge's finding that Simmons' relevant conduct involved 72.66 grams of cocaine was not clearly erroneous. Because this amount is well in excess of the 50 grams required under the prior offense statute, we affirm the District Court's findings of relevant conduct and sentence.

B.  Sentence Disparity

Simmons next complains that the attribution of the 42.52 grams of cocaine from Carter's statement to him but not to his co-conspirator resulted in an unfair sentencing disparity. The defendant urges us to consider this a case of erroneous factual finding by the District Court in failing to attribute that amount of cocaine to Dixon, but he again misinterprets the issue before us. What he is really claiming is a sentencing disparity and we shall treat it as such and quickly dispose of the argument.

Our cases have consistently held that "a disparity among co-defendants' sentences is not a valid basis to challenge a guideline sentence otherwise correctly calculated." United States v. Edwards, 945 F.2d 1387, 1397-98 (7th Cir. 1991). Furthermore, the fact that Dixon was an assistant and not the leader of the organization, the fact that Dixon pled guilty pursuant to a plea agreement and cooperated with law enforcement authorities, and the fact that Dixon had a lesser criminal history are factors which we have held justify a disparity between the sentences of co-defendants.

See United States v. Hall, et al., 2000 WL 626721 (7th Cir. May 16, 2000) and United States v. Meza, 127 F.3d, 545, 549-50 (7th Cir. 1997).

Simmons' sentence was correctly calculated. His sentence is affirmed.


C.   Acceptance of Responsibility

Simmons' final argument is that he should have received the full three level reduction for acceptance of responsibility because he pleaded guilty to the charges against him. The District Court only accorded him a two level reduction. "The district court's acceptance of responsibility determination under U.S.S.G. sec.3E1.1 is a factual determination, and will be overturned only if clearly erroneous." United States v. Francis, 39 F.3d 803, 807 (7th Cir. 1994).

Here, there is no doubt that the court did not err in denying Simmons the additional reduction. Simmons attempted to recant the written statement he gave after his arrest. He did not notify the government that he would enter a plea of guilty until two weeks before his sixth trial setting, and then only said he would plead guilty if his final pre-trial motion was denied. Because of his conduct, the government prepared for trial many times and jurors had to be summoned and ready for trial on the day he did finally plead. Hardly the conservation of judicial resources contemplated by the Sentencing Guidelines. And hardly the conduct of a defendant accepting full responsibility for his actions.

The mere fact that Simmons pleaded guilty does not entitle him to a reduction for acceptance of responsibility. United States v. Branch, 195 F.3d. 928, 937 (7th Cir. 1999). He must demonstrate that he has accepted full responsibility for his actions, United States v. Buckley, 192 F.3d 708, 711 (7th Cir. 1999). We do not think that Simmons has met this burden. He delayed pleading guilty until all other options had been exhausted and attempted to recant his statement. For those reasons, we hold that the District Court did not err in denying him a three level

reduction for responsibility.

III.  CONCLUSION

   For the foregoing reasons, the judgment
and sentence of the District Court are
affirmed.

AFFIRMED.

/1 Carter was arrested at the Trails End Motel with
Simmons and Dixon.
/2 Since the government filed an information charg-
ing a prior offense against Simmons, pursuant to
21 U.S.C. sec.sec. 850 and 851, once a finding of
50 grams is made, Simmons automatically receives
the statutory sentence of 20 years, minimum.