**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Timothy BRIMLEY, Defendant–Appellant.**

No. 97–3397.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1998.

Decided June 30, 1998.

Steven M. Biskupic (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Pamela Pepper (argued), Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

The defendant appeals from a judgment of conviction of conspiracy to distribute in excess of one kilogram of cocaine and five kilograms of marijuana, in violation of 21 U.S.C. §§ 846 (conspiracy) and 841(a)(1) (distribution of controlled substance). The defendant also appeals the sentence imposed. The defendant argues that (1) the evidence did not support the verdict, and that in sentencing the court erred in (2) determining the amount of drugs involved in the conspiracy, (3) enhancing the level of the offense for obstruction of justice and (4) refusing to grant the defendant a two-level reduction in the level of the offense for acceptance of responsibility.

## Background

Although Craig Willis was obliged to remain in Wisconsin as a condition of his parole, he paid a couple of visits to his travel agent in the fall of 1996. On those occasions, Willis bought round-trip airline tickets to Los Angeles for the defendant, Timothy Brimley, and another man, Lewis Flowers. One excursion was to depart November 1, 1996, and return November 2, the other to depart November 12 and return November 13. Those transactions stuck in the travel agent's mind because Willis paid for the tickets in cash, a total of $1,752.

On November 15, 1996, Brimley and Willis were arrested in the upper unit of a Milwaukee duplex, shortly after Brimley arrived with a white box filled with over 11 pounds of marijuana. The duplex had been placed under surveillance by the Postal Inspection Service after postal inspectors discovered cocaine in a brown package mailed to the duplex. The package had been sent express mail from Los Angeles on November 13. When it reached Milwaukee's main post office on November 14, its origin, labeling, size and weight attracted the postal inspectors' attention. After doing some further checking, involving among other things a drug detecting dog, they obtained a federal search

warrant and opened the package. It held a gift-wrapped laundry detergent box containing almost a kilogram of cocaine. The postal inspectors sprayed the gift wrap with a substance that emits visible light when exposed to ultraviolet radiation. Then they repackaged the contents. A postal inspector disguised as an ordinary mail carrier delivered the package to the duplex. About 30 minutes later, pursuant to an anticipatory search warrant issued by the Milwaukee County Circuit Court, postal inspectors and Milwaukee police officers searched the duplex. In the upstairs unit they found Brimley and Willis along with the packages containing marijuana and cocaine, firearms and "drug paraphernalia"—digital gram scales, plates, knives and sandwich bags used for packaging narcotics for sale—coated with a white powdery residue. The box of marijuana, which bore a Los Angeles postmark dated November 13, 1996, was unopened. The gift-wrapped laundry detergent box containing cocaine had been removed from its packaging, but the wrapping had not been taken off. Under ultraviolet light, residue from the fluorescent spray applied to the gift wrap appeared on Brimley's hands and Willis's. The upstairs unit was furnished with only two or three pieces of furniture; there was no food in the kitchen or clothing in the closets; no toiletries were in the bathroom.

Later that day, Brimley was brought to the Milwaukee police administration building. He gave a brief statement admitting that he knew Willis sold drugs, Tr. 133, and that he believed the white box contained cocaine, Tr. 136. Brimley and Willis were each indicted on drug conspiracy charges. Willis was also indicted on weapons and money laundering charges. Willis entered into a plea agreement prior to trial. Brimley was tried before a jury in June 1997 and convicted. In September 1997 he was sentenced to be imprisoned for ninety-two months (consecutive to a sentence in another case), followed by supervised release for four years, and fined $1,000.

## Discussion

■ Brimley moved for judgment of acquittal at the close of the government's case, *see* Fed. R.Crim. P. 29(a):

There is no evidence at all that Mr. Brimley is the person who sent packages from California. There is no evidence that proves even in light of the government's evidence, in the light most favorable to the government that Mr. Brimley knew what was in the package that he carried to Mr. Willis's house that day. There has been no evidence that any of these incidents took place anywhere or they found any evidence where Mr. Brimley was living and for those reasons there's absolutely no evidence that there was any agreement between Mr. Brimley and Mr. Willis to possess drugs and to distribute drugs. For that reason the defendant would ask the Court at this time to enter judgment in favor of the defendant.

Tr. 163–64. The court summarily denied the motion. Tr. 164. The record does not show that the motion for acquittal was ever renewed. The failure to renew the motion operates as a waiver, "and we may reverse a conviction for insufficiency of the evidence only if there has been a manifest miscarriage of justice." *United States v. Pless*, 982 F.2d 1118, 1122 (7th Cir.1992); *see also United States v. Carlino*, 143 F.3d 340, 343 (7th Cir.1998). The government does not rely on the waiver, however, and it would not alter our decision, so we ignore it. *Cf. id.* Therefore, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see United States v. Castillo*, 148 F.3d 770, 774 (7th Cir.1998). We construe Brimley's appeal as a challenge to the denial of his motion for acquittal, and so consider only the state of the evidence at the close of the government's case. In light of the defendant's own testimony later in the trial, which we review in the discussion of Brimley's challenge to his sentence, a look at the government's evidence only gives Brimley his best shot. *See United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir.1991) (noting that if a defendant takes the stand and "denies the charges and the jury thinks he's a liar, this becomes

evidence of guilt to add to the other evidence.").

■ The essential elements of a drug conspiracy are existence of a conspiracy and the defendant's knowledge of and intention to join the conspiratorial agreement. *United States v. Theodosopoulos*, 48 F.3d 1438, 1449–50 (7th Cir.1995). Although the defense contends that at most "the evidence proved a series of unexplained events," Br. of Def.-Appellant 22, that assertion is clearly wrong. The government has provided a coherent, plausible explanation of the events—a drug conspiracy involving the defendant and Craig Willis. Brimley was aware that Willis sold drugs, and the materials found in the duplex in which Brimley was arrested provide further indication of an intent to distribute. Willis's purchase of the airline tickets for Brimley, Brimley's presence in Los Angeles at the time drugs were shipped to Milwaukee and his delivery of marijuana to Willis on November 15 are evidence of a conspiracy and Brimley's involvement in it. The defendant offers no competing theory of the government's evidence that explains why the evidence is insufficient to support the conviction. While even a plausible alternative explanation of the evidence would not be a sufficient basis for reversal, *see Theodosopoulos*, 48 F.3d at 1451, it probably comes close to being a necessary one.

■ This court has reviewed the sufficiency of the evidence in hundreds of drug conspiracy cases since *Jackson v. Virginia*. (Most have been decided since *United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir. 1990), clarified the proper standard of review.) We have overturned convictions in a number of these cases. While neither the defense nor the government found it necessary to discuss this case law, a review of our precedents confirms that the evidence here provides an adequate foundation for Brimley's conviction. We have not discovered any Seventh Circuit case finding the evidence wanting that provides grounds for overturning Brimley's conviction. Brimley does not contend that his relationship with Willis was merely an arrangement between a buyer and a seller. *See, e.g., United States v. Smith*, 34 F.3d 514, 523 (7th Cir.1994); *United States v.*

*Goines*, 988 F.2d 750, 764 (7th Cir.1993); *United States v. Lamon*, 930 F.2d 1183, 1190–92 (7th Cir.1991); *United States v. Kimmons*, 917 F.2d 1011, 1015–17 (7th Cir. 1990); *United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir.1990); *United States v. Sullivan*, 903 F.2d 1093, 1098–99 (7th Cir.1990); *cf. United States v. Townsend*, 924 F.2d 1385, 1402–05 (7th Cir.1991). The government's evidence goes beyond showing that Brimley was "present during certain drug transactions" and had knowledge of a drug conspiracy. *United States v. Williams*, 798 F.2d 1024, 1029–30 (7th Cir.1986). Nor could Brimley credibly maintain that the evidence was as consistent with innocence as guilt. *See United States v. Harris*, 942 F.2d 1125, 1130 (7th Cir.1991); *cf. United States v. Covelli*, 738 F.2d 847, 858–60 (7th Cir.1984). The Constitution does not require that the government exclude any possibility that Brimley was an innocent dupe of Willis. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781. The government presented evidence that the defendant's actions advanced the purpose of a conspiracy and of his presence at multiple "critical junctures" of a crime. This is an adequate basis for the judgment of conviction. *See Theodosopoulos*, 48 F.3d at 1451; *United States v. Cochran*, 955 F.2d 1116, 1122 (7th Cir.1992).

■ On the sentencing issues, Brimley must establish that the district court's decisions were clearly erroneous. *See United States v. Porter*, 145 F.3d 897, 904 (7th Cir. 1998); *United States v. Scott*, 145 F.3d 878, 885 (7th Cir.1998); *United States v. Jarrett*, 133 F.3d 519, 530 (7th Cir.1998). Brimley first contends that the district court erred by failing to make a specific finding of the amount of drugs involved in the crime. On this point, however, the district court adopted the findings in the presentence investigation report (PIR). *See* Sent. Tr. 30; *see also* Fed.R.Crim.P. 32. "The reference to the findings and rationale in the presentence report allows us, as a reviewing court, to evaluate the district court's decision, and that is all that is required." *United States v. Taylor*, 135 F.3d 478, 483 (7th Cir.1998).

■ The sentencing enhancement for obstruction of justice was based on Brimley's

testimony in his own behalf during the trial. During that testimony Brimley addressed his trips to California. He explained that Willis had a girlfriend in California who had matched Brimley with one of her friends. Brimley and the woman had numerous phone conversations. Tr. 184–85. In September 1996, Willis told Brimley that Willis had pre-paid for airline tickets but was unable to use them because, under the terms of his parole, he was required to stay near his home. Tr. 184. Willis offered to sell Brimley the tickets at a substantial discount—$200 for $600 tickets. Brimley had several hundred dollars at home from doing odd jobs, so he agreed to the deal. Tr. 186–87. In September 1996, Brimley and Flowers flew to Los Angeles and were picked up at the airport by Willis's California girlfriend and her friend. Tr. 188. The quartet did some sightseeing, including an automobile tour of Beverly Hills, a stop outside Universal Studios and a trip to the beach. Then they went back to a house in San Bernardino, smoked some marijuana, and had a few drinks. The next day Brimley and Flowers returned to the Midwest. Brimley continued to keep in touch with the women by phone. Tr. 196. A couple of months later, Brimley again bought some airline tickets to California from Willis, and Brimley and Flowers flew back to Los Angeles for a reunion with the women. Tr. 196, 219, 221. This time the women stood them up. Tr. 225–27. The men checked into a nearby hotel and then returned the next day. During Brimley and Flowers's next trip to Los Angeles a few weeks later, the same thing happened—no women, no explanation, no sightseeing, just another uneventful lay-over and a return to the Midwest the following day. Tr. 196–97, 231. By the time of his trial in late June 1997, Brimley had forgotten the names and phone numbers of the two women in Los Angeles. Tr. 188, 210.

The district court accepted the PIR recommendation of a two-level increase in the offense level for obstruction of justice. *See* U.S.S.G. § 3C1.1. The rationale was that the defendant committed perjury when he testified about his Los Angeles trips. In the course of reviewing the PIR recommendation for this enhancement, the district court stated,

Obviously that paragraph relates to the subject we just visited. I do also want to note that with regard to the testimony of Mr. Brimley concerning the visiting girl-friends, I did not find that believable. The circumstances of the trip, the testimony of Mr. Brimley concerning these girlfriends, his inability to remember these women's names, had no hint of believability. And the Court does believe that Mr. Brimley did not testify truthfully with respect to the reason for the trip.

Sent. Tr. 28. The "subject just visited" was whether Brimley was responsible for sending the boxes of cocaine and marijuana from Los Angeles to Milwaukee. On that point, the defendant had conceded that he could be held responsible for the marijuana in the package he carried to the duplex, but had maintained that he had no involvement in the shipment of the packages from Los Angeles. Therefore, he argued, he should not be held responsible for the cocaine. The district court rejected the argument:

Based upon the testimony in this case, that which was just elicited as well as the documentary evidence and testimony at trial the Court is of the view that the government has established by a preponderance of the evidence that Mr. Brimley was aware that cocaine was being transported and that this offense was one that involved not just the transportation of marijuana but also the transportation of cocaine.

Sent. Tr. 26–27.

■ In order to facilitate appellate review of a § 3C1.1 enhancement, the district court should indicate that it has found all of the elements of perjury: "falsity, willfulness and materiality." *United States v. Camuti*, 78 F.3d 738, 745 (1st Cir.1996); *see United States v. Webster*, 125 F.3d 1024, 1037–38 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 698, 139 L.Ed.2d 642 (1998). Brimley contends that the district court failed to state the basis for its conclusion that the testimony was not truthful, and did not adequately address the willfulness or materiality elements.

The district court identified the relevant testimony and expressly found that it was

false. The basis for this conclusion was that the testimony itself was incredible; so the district court was not required to point to conflicting evidence. The testimony was material if it had the natural tendency, or capacity, to influence the jury. *See United States v. Pribble*, 127 F.3d 583, 588 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1056, 140 L.Ed.2d 118 (1998). The district court opened the discussion of the proposed enhancement by confirming that Brimley's testimony went to a critical issue in the case—whether Brimley's visits to Los Angeles were for the purpose of advancing the conspiracy. Finally, the district court's statement that the testimony "had no hint of believability" makes it plain that the court concluded that Brimley's testimony was intentionally false, rather than "a result of confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). It is clear that the district court did not mechanically apply the enhancement merely because "the accused t[ook] the stand and [was] found guilty." *Id.* at 96, 113 S.Ct. 1111; *see United States v. Girardi*, 62 F.3d 943, 947 (7th Cir.1995); *United States v. Dillard*, 43 F.3d 299, 308–09 (7th Cir.1994); *United States v. Boggi*, 74 F.3d 470, 478–79 (3d Cir.1996). Therefore we need not decide whether Brimley's failure to contest the materiality or willfulness of his testimony before the sentencing court, *see* Def.'s Objections to PIR 4–6; Tr. 28–29, waived his right to raise those points on appeal, *cf. United States v. Newman*, 144 F.3d 531, 543 (7th Cir.1998), or whether the patent materiality of Brimley's testimony would have permitted us to excuse a failure of the district court to address that element, *cf. Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997); *United States v. Gaudin*, 515 U.S. 506, 522, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *United States v. Sassanelli*, 118 F.3d 495, 502 n. 1 (6th Cir.1997).

Brimley also assigns error to the district court's denial of an adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). But there are no extraordinary circumstances here that could reconcile obstruction of justice in the course of the trial with acceptance of responsibility. *See United States v. Ewing*, 129 F.3d 430, 435 (7th Cir.1997).

AFFIRMED.