In the
United States Court of Appeals
For the Seventh Circuit

Nos. 97-1987, 97-2541, 98-3839

United States of America,

Plaintiff-Appellee,

v.

Akanni Hamzat, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 95 CR 523--Harry D. Leinenweber, Judge.

Argued June 9, 1999 --Decided June 26, 2000

   Before Posner, Chief Judge, and Bauer and
Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Akanni
Hamzat, Adetoro Adeniji, and Sunny Emezuo
were involved in a major way during the
early 1990s with trafficking in heroin
between Nigeria, Thailand, and the United
States. Led by Omobola Adegbite (known as
"Bola"), a woman who lived in
Merrillville, Indiana, the ring involved
nearly twenty people.

   Hamzat, Adeniji, and Emezuo, the three
defendants before us in these appeals,
worked for Bola in various capacities.
Hamzat, who met Bola when he was dating
her sister, was a courier. On Bola's
instructions and over the course of
multiple deliveries, he personally
transported 6.8 kilograms of heroin. (The
entire conspiracy involved 60 kilograms.)
Hamzat also assisted Bola in conveying
payments by wire transfer to Bola's
overseas suppliers. She paid him on a
per-transaction basis, rather than in
some way tied to the drug profits. Hamzat
pleaded guilty under a plea agreement to

one count of conspiracy to distribute heroin, in violation of 21 U.S.C. sec. 846. He was sentenced to 97 months in prison and five years' supervised release.

After meeting Bola at a birthday party for Bola's twins, Adeniji was recruited to serve as a "go-between" for Bola and Adeniji's brother-in-law, a drug dealer. Between 1993 and 1995, she repeatedly purchased heroin from Bola in quantities of at least 100 grams, which she then gave to her brother-in-law. Sometimes she purchased on credit. Adeniji chose to plead not guilty and go to trial; the result was convictions on charges of conspiracy to distribute heroin, 21 U.S.C. sec. 846, use of the telephone to facilitate distribution of heroin, 21 U.S.C. sec. 843(b), and possession with intent to distribute heroin, 21 U.S.C. sec. 841(a)(1). Her sentence was for 121 months in prison, a fine of $5,000, and five years' supervised release.

Emezuo was one of Bola's Bangkok-based suppliers. He helped another supplier, Mutitat Titilola Olubi ("Titi") procure heroin for shipment to the United States, which they packaged and hid in luggage to avoid detection. He was paid in several ways: he invested in portions of the heroin shipments and received a balance of the proceeds, he accepted from Bola an expensive watch and a 1995 Acura, and he handled wire transfers of U.S. currency that he knew constituted payment for heroin. After extensive negotiations, he was unable to obtain a plea agreement. On the day trial was to begin, he entered a blind plea of guilty to one count of conspiracy to possess with intent to deliver, in violation of 21 U.S.C. sec. 846, and received a sentence of 145 months in prison, a fine of $2,500, plus, once again, five years' supervised release.

Hamzat and Adeniji appeal various aspects of their sentences. Emezuo's appellate attorney has filed an Anders brief and asked to withdraw. Responding to the Anders brief, Emezuo asks us to find that his trial counsel was ineffective and that this ineffectiveness had a negative effect on his sentence.

A.  Akanni Hamzat

1.  Minor or Minimal Role in the Offense.

Hamzat first argues that his insignificant role in the offense entitles him to a reduction in his offense level under U.S.S.G. sec. 3B1.2. He characterizes himself as a mere "errand-runner" who made deliveries as ordered by Bola, with no decision-making role and no connection between his own earnings and the success of the conspiracy. A determination of the defendant's role in the offense is "heavily dependent upon the facts of the particular case," U.S.S.G. sec. 3B1.2 Background Note, and we accordingly review the district court's findings for clear error. United States v. Nobles, 69 F.3d 172, 189-90 (7th Cir. 1995).

Section 3B1.2 provides for a four-level reduction if the defendant can show that he was a "minimal participant" in the offense, which is defined as someone "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. sec. 3B1.2, Application Note 1. Section 3B1.2 allows a two-level reduction if the defendant can show that he was a "minor participant" in his offense, "less culpable than most other participants." U.S.S.G. sec. 3B1.2, Application Note 3. A three-level reduction is allowed if the defendant falls between a minor and minimal participant. To receive an offense level reduction under sec. 3B1.2, a defendant must demonstrate she was "substantially less culpable than the conspiracy's other participants." United States v. Soto, 48 F.3d 1415, 1425 (7th Cir. 1995), quoting United States v. DePriest, 6 F.3d 1201, 1214 (7th Cir. 1993).

Hamzat claims that he played a minor role because he was charged with only the 6.8 kilograms he actually delivered (and not the 60 kilograms attributable to the conspiracy). Unfortunately for him, this fact virtually dooms his effort to receive the downward adjustment he seeks. This circuit follows the rule that where

a defendant is sentenced only for the amount of drugs he handled, he is not entitled to a sec. 3B1.2 reduction. United States v. Burnett, 66 F.3d 137, 140 (7th Cir. 1995). "When a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense." Id.; see also United States v. Cobblah, 118 F.3d 549, 552 (7th Cir. 1997); United States v. Uriostegui-Estrada, 86 F.3d 87, 90 (7th Cir. 1996); United States v. Lampkins, 47 F.3d 175, 181 & n.3 (7th Cir. 1995).

We are aware, of course, that not all circuits have embraced our approach to mitigating role reductions. See, e.g., United States v. Isaza-Zapata, 148 F.3d 236, 241 (3d Cir. 1998) (rejecting the approach taken in Burnett and Lampkins); United States v. Snoddy, 139 F.3d 1224, 1231 (8th Cir. 1998); United States v. Demers, 13 F.3d 1381, 1383-84 (9th Cir. 1994). On the other hand, the Burnett approach has other adherents. See United States v. Rodriguez de Varon, 175 F.3d 930, 941-44 (11th Cir. 1999) (en banc), cert. denied 120 S. Ct. 424 (1999) (No. 99-6150); United States v. James, 157 F.3d 1218, 1220 (10th Cir. 1998); United States v. Marmolejo, 106 F.3d 1213, 1217 (5th Cir. 1997); United States v. Lewis, 93 F.3d 1075, 1085 (2d Cir. 1996); United States v. Olibrices, 979 F.2d 1557, 1560-61 (D.C. Cir. 1992).

The circuits that have rejected our mode of analysis take the position that the Guidelines require the district court to "examine all relevant conduct, not merely the defendant's, in assessing his relative culpability." Isaza-Zapata, 148 F.3d at 241. The minor or minimal participant reduction then operates with reference to that much greater starting point. Here, the relevant conduct was arguably 60 kilograms, which yields an offense level of 38 for someone like Hamzat with a Criminal History Category of I. Unadjusted, the sentencing range for such a person is 235-293 months, but even with a 4-level downward adjustment to a level 34, the range is still 151-188 months, considerably more than the 97 months Hamzat received. Thus, it is clear that some defendants would be far worse off under the rule adopted by some of our

sister circuits. Our approach simply takes a strict view of the offense charged and the "reasonable foreseeability" of other activity, but then holds the defendant fully responsible for what he or she actually did. We think this is a defensible reading of the Guidelines, and we are not inclined to change it here.

Second, Hamzat argues that he was a mere "errand-runner" who made deliveries under the order of Adegbite. Even if Hamzat was "just" a courier, we have noted before that couriers play an important role in any drug distribution scheme and therefore are not automatically entitled to a mitigating role reduction. United States v. Osborne, 931 F.2d 1139, 1158 (7th Cir. 1991), quoting United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989). See also Uriostegui-Estrada, 86 F.3d at 89-90. Hamzat repeatedly did jobs for Bola, not only carrying drugs but assisting her with wire transfers of drug money. Given the extent of his involvement, the district court properly denied Hamzat a mitigating role reduction.

2. Acceptance of Responsibility.

Hamzat received a two-level reduction for acceptance of responsibility under U.S.S.G. sec. 3E1.1(a). Not content with that, he urges here that he should have received the additional one-level reduction possible under sec. 3E1.1(b). The extra level can be awarded if the defendant qualifies for the sec. 3E1.1(a) reduction, the defendant's offense level is 16 or greater, and the defendant either provided complete information to the government in a timely fashion or alerted the government in time to his intention to enter a plea of guilty, so that the prosecution and court could save their own resources.

The district court concluded that Hamzat waited too long to enter his guilty plea to warrant the additional reduction. This finding (a quintessential question of judgment for the court) was not clearly erroneous. Hamzat did not enter his plea until three days after the original trial

date, and one week before the rescheduled date. He has attempted to excuse the last-minute nature of the plea by arguing that he delayed only because his lawyers were trying to work out the best deal possible. The government had known for some time that he wanted to plead guilty, and he sees no reason why he should be penalized for hard negotiations. Further more, he suggests, the government was not prejudiced by the last-minute nature of his plea, because it had to prepare to try his co-defendants anyway.

The district court was correct to reject this line of argument. For starters, Hamzat in fact did not make his intention to plead known right away: approximately one year passed between his arrest and his plea. He decided to plead guilty only after his original trial date had come and gone. We have previously held that a defendant who waits to plead guilty until the "brink of trial" is not entitled to a reduction, United States v. Covarrubias, 65 F.3d 1362, 1367 (7th Cir. 1995); surely, therefore, waiting until after the original trial date is not "at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calender efficiently." U.S.S.G. sec. 3E1.1, Application Note 6. We find equally unpersuasive Hamzat's argument that the government was not prejudiced by his delay. True, whatever Hamzat did, the government had to prepare to try his co-defendants. Nonetheless, the evidence and case against Hamzat was not identical to that presented against his co-defendants: the government was forced to prepare specifically for Hamzat's trial.

Last, we see no merit in the idea that an untimely plea can be excused for purposes of sec. 3E1.1(b) whenever the defendant holds out for a better deal. The cases upon which Hamzat relies do not so hold; instead, they stand for the quite different proposition that the court may properly make the additional reduction available to a defendant who admits factual guilt in a timely manner but challenges the government's position on legal grounds. See United States v. Smith, 106 F.3d 350, 352 (11th Cir. 1997); United States v. McConaghy, 23

F.3d 351, 353-54 (11th Cir. 1994). Here, Hamzat delayed admitting factual guilt and, as a result, lost the sec. 3E1.1(b) reduction. This was nothing more or less than a strategic decision that turned out badly. That he now regrets his choice does not turn the district court's denial of the additional acceptance of responsibility reduction into an error.

### B.  Adetoro Adeniji

#### 1.  Drug Quantity Calculation.

The district court, adopting the presentencing report's recommendation, attributed slightly less than three kilo grams of heroin to Adeniji. Adeniji argues that the evidence supports only 750 grams. The district court's calculation of the quantity of drugs involved in the offense is a finding of fact subject to clear error review. United States v. Montgomery, 14 F.3d 1189, 1196 (7th Cir. 1994). In this case, however, Adeniji neither filed written objections to the presentencing report nor objected during the sentencing hearing to the calculation of drug quantities directly attributable to her. Her omissions amount to forfeiture and result in a plain error standard of review. United States v. Olano, 507 U.S. 725, 731-35 (1993); United States v. Wilson, 134 F.3d 855, 869 (7th Cir. 1998).

Like Hamzat, Adeniji was sentenced only for the amounts directly attributable to her. A memorandum accompanying the presentencing report sets forth the many individual transactions upon which the three kilogram calculation was based. The district court accepted this account, which was supported by Bola's testimony, wiretap transcripts, agent testimony, seized drugs, and seized drug records. There was no clear error: Adeniji is able to come up with a drug quantity total of 750 grams only by disregarding a number of transactions for which the government provided evidentiary support.

Adeniji claims that the district court's

calculation was possible only through double-counting, but our review of the record reveals no such problem. The amounts per transaction were specifically set out and supported through testimony, exhibits, and other evidentiary submissions. That there was no double-counting is also supported by the fact that Adeniji was directly involved in each of the listed transactions; all of the amounts included in Adeniji's total were actually received by her or intercepted just before reaching her.

Last, Adeniji argues that the drug quantity attributed to her was not established with sufficient specificity to allow for adequate appellate review and accordingly her sentence must be vacated. Not true: the district judge stated in open court that he was adopting the presentencing report's recommendation and holding Adeniji responsible for just under three kilograms, and that is enough. See United States v. Taylor, 135 F.3d 478, 483 (7th Cir. 1998); see also United States v. Brimley, 148 F.3d 819, 822 (7th Cir. 1998); Fed. R. Crim. P. 32. The district court did not discuss each of the transactions at issue but, given that defense counsel offered no challenge to any of the individual transactions either by submitting another version of events to counter the government's version or by objecting during sentencing, we see no need for the court to have done so.

2. Minor or Minimal Role in the Offense.

Like Hamzat, Adeniji argues that she played a minor or minimal role in the offense that entitles her to a two- to four-level reduction in her offense level. See U.S.S.G. sec. 3B1.2. She did not make this argument to the district court, so our review once again is for plain error only.

Adeniji's problem is the same as Hamzat's: she was sentenced only for the quantity of drugs directly attributable to her and is therefore precluded from a mitigating role reduction. See, e.g.,

Burnett, 66 F.3d at 140. Moreover, Burnett notwithstanding, there is no plain error in the district court's conclusion that she was neither a minimal nor a minor player. Adeniji purchased nearly three kilograms of heroin from Bola for resale. Although she was less culpable than other members of the conspiracy, this court has recognized that low-level dealers are vital to the success of a drug conspiracy and accordingly upheld district courts' refusals to grant them mitigating role reductions. See, e.g., United States v. Carraway, 108 F.3d 745, 760 (7th Cir. 1997); United States v. Brick, 905 F.2d 1092, 1095-96 (7th Cir. 1990).

Finally, Adeniji argues that her co-defendants were sentenced less harshly than she was. That Adeniji's sentence was harsher is a mere reflection of the proper application of the Sentencing Guidelines: the guideline sections applicable to Adeniji were higher than those applicable to her co-defendants who pleaded guilty and received downward departures for cooperating. Such justifiable disparities in sentencing are not a proper basis for a downward departure. See United States v. McMutuary, Nos. 98-1150 & 98-1151, slip op. at 22 (7th Cir. June 21, 2000); United States v. Meza, 127 F.3d 545, 549 (7th Cir. 1997).

### 3. Acceptance of Responsibility Reduction.

Adeniji argues that she is entitled to a reduction in her offense level for acceptance of responsibility. See U.S.S.G. sec. 3E1.1. Her failure to make this argument at sentencing leads again to a plain error standard of review. In any event, we find no error, plain, clear, or otherwise, in the district court's decision. Adeniji went to trial and denied the prosecution's factual allegations. While a challenge to the legal basis for a charge (such as a constitutional challenge to a statute or a challenge to the applicability of a statute to the defendant's conduct) does not preclude the possibility of an acceptance of responsibility reduction,

the Guidelines explain that the sec. 3E1.1 "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. sec. 3E1.1, Application Note 2.

Adeniji has tried to justify her failure to come forward with the truth earlier by arguing that she wanted to plead guilty but was told by her lawyer that he was too busy and that the government did not want to talk to her. Naturally, the record provides no support for these claims. Her alleged problems with her representation may be addressed on collateral review via an ineffective assistance of counsel claim. On the record before us, the district court was entitled to conclude that she had not accepted responsibility.

C.   Sunny Emezuo

Emezuo's appellate counsel has moved to withdraw based upon a brief filed under Anders v. California, 386 U.S. 738 (1967). As he is entitled to, Emezuo has filed a response, in which he argues that his trial attorney, Robert Bailey, failed to provide effective assistance of counsel.

As an initial matter, we note that the Anders brief that was filed barely meets the minimal standard we can accept. An Anders brief is adequate on its face if "it explains the nature of the case and intelligently discusses the issues that a case of the sort might be expected to involve." United States v. Tabb, 125 F.3d 583, 584 (7th Cir. 1997); United States v. Wagner, 103 F.3d 551, 553 (7th Cir. 1996). If the brief is adequate on its face, "we think we can comfortably rely on the professional opinion it offers." Tabb, 125 F.3d at 584. This brief devotes only three pages to its discussion of the merits and its arguments are highly conclusory. Moreover, the brief makes the bizarre claim that Emezuo's 145-month sentence is not reviewable on appeal because it was within the applicable

Guideline range.

We have, however, looked at the points counsel has raised in his brief, we have reviewed the record and the lengthy appendix furnished to us, and we have considered Emezuo's response to his counsel's action. Emezuo is distressed that his more culpable co-conspirators (such as Bola) got lesser sentences because they were able to negotiate successful plea agreements. He presents this and other arguments, however, through the prism of an ineffective assistance of counsel claim. As a layperson, there is no reason Emezuo would know that such claims are almost never suitable for direct appeals, because the record almost inevitably will not contain the crucial information for assessing them properly. United States v. D'Iguillont, 979 F.2d 612, 614-15 (7th Cir. 1992). We therefore decline to consider that argument at this time, since it is more properly handled in a petition under 28 U.S.C. sec. 2255.

Apart from that, our review of the record reveals no arguable issue about the way the district court handled Emezuo's sentencing. At the sentencing hearing, the district court had before it the PSR, his lawyer's motion for a downward departure, and copies of a number of "certificates of achievement" Emezuo had earned during his stay at the MCC. The court substantially accepted the PSR's recommendations. The court attributed 29.6 kilograms of heroin to Emezuo, found that he played neither an aggravating nor a mitigating role in the offense, and granted him a two-level adjustment for acceptance of responsibility. The court denied the safety-valve adjustment because Emezuo had not, prior to sentencing, told the government everything he knew about the offense. The court also considered Bailey's motion for a downward departure. Bailey argued that a downward departure was justified because after Emezuo's release from American prison, he would be deported to Nigeria, where he was likely to be incarcerated for the same activities. Although the court rejected this argument as too speculative, it departed downward by six months to compensate for the fact that, as a

foreign national, Emezuo was not eligible to spend the final six months of his sentence in a halfway house.

The court's factual findings would easily withstand clear error review, if Emezuo were to pursue an appeal, and it is clear that the court understood the discretion it had with respect to departures and exercised it. Thus, we agree with the ultimate conclusion of Emezuo's appellate counsel that an appeal would be futile.

We therefore Affirm the sentences in Appeal Nos. 97-1987 (Akanni Hamzat) and 97-2541 (Adetoro Adeniji). In No. 98-3839 (Sunny Emezuo), we grant counsel's motion to withdraw from the case and we Dismiss the appeal.