# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1263

SUNNY EMEZUO,

*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-C-7518—**Harry D. Leinenweber**, *Judge*.

———————

ARGUED SEPTEMBER 9, 2003—DECIDED FEBRUARY 6, 2004

———————

Before CUDAHY, and EASTERBROOK, and RIPPLE, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Sunny Emezuo appeals the denial of his motion pursuant to 28 U.S.C. § 2255, in which he claims to have received ineffective assistance of counsel with respect to the proffer requirement of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Because we conclude that his proffer would have been insufficient even if it had been submitted to the government, Emezuo cannot show he suffered prejudice, and we therefore affirm.

## I.

The facts underlying Emezuo's arrest and conviction are set out in our opinion on his direct appeal, *see United States v. Hamzat*, 217 F.3d 494, 501 (7th Cir. 2000), but a brief recap may be useful. Emezuo, a Nigerian national, was one of fifteen individuals involved in an international heroin distribution ring operating between Thailand, Nigeria and the United States from 1993 to 1996. He acted as a Bangkok-based supplier, assisting another supplier ("Titi") in procuring and packaging heroin in luggage to be smuggled into the United States, where the heroin was distributed by "Bola." Emezuo received wire transfers from Bola on Titi's behalf that he knew to be payments for heroin, and he was paid in cash for his assistance. He was also paid through partial ownership of some of the heroin shipments, and he accepted in additional payment an expensive watch and automobile. He later began working directly for Bola after she had a falling out with Titi. Emezuo was arrested in Thailand on July 22, 1996, and was subsequently voluntarily extradited to the United States, where he was charged with one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Emezuo was unable to reach a plea agreement with the government, but nonetheless, on the day of trial he entered a "blind" plea of guilty to the conspiracy charge.

It is at this point that events become relevant to this appeal. During Emezuo's plea colloquy, which took place on February 17, 1998, he admitted to most of the above acts though, presumably due to language difficulties, it apparently took several rounds of questioning before he understood what he was being asked to admit (and before the court and the government understood what he was admitting). He admitted to receiving wire transfers representing payment for drugs and to getting a "commission" for doing

so, (Pld'g Tr. at 63-64, 77[1]); to owning portions of heroin shipments (Pld'g Tr. at 67-68, 74, 78, 80); to helping put heroin in secret compartments in suitcases for shipment (Pld'g Tr. at 69, 74-75); and to receiving an expensive watch, a Toyota automobile and money for his assistance with the conspiracy (Pld'g Tr. at 75). He claimed that he had initially been duped by Titi into receiving wire transfers, thinking that they were payments for the clothing she was shipping to Bola in the United States (Pld'g Tr. at 63), but his claimed ignorance was disputed by the government. Emezuo's dealings with Titi and subsequently Bola were not well-developed during the plea colloquy. Thus, Emezuo's trial counsel said that he would file a defendant's version that would be "full and complete." (Pld'g Tr. at 69.)

The defendant's version was prepared by Emezuo and his trial counsel and was submitted on May 7, 1998, to the probation officer reviewing his case. (Sep. App. of Pet'r, Tab 4, App. A.) It is this written statement which Emezuo now contends contains the information that, if it had been proffered to the government, would have rendered him eligible for a two-level "safety valve" reduction pursuant to U.S.S.G. § 2D1.1(b)(6).[2] In his written statement, Emezuo again claimed to have been initially duped by Titi, but after several months of receiving wire transfers on her behalf, he began to suspect that she may have been smuggling drugs because the payment amounts were too frequent and large

---

[1]  References to "Pld'g Tr." refer to the Pleading Transcript.

[2]  For purposes of the safety valve, a probation officer does not qualify as "the government." *See United States v. Smith*, 174 F.3d 52, 56 (2d Cir. 1999); *United States v. Contreras*, 136 F.3d 1245, 1246 (9th Cir. 1998); *United States v. Jimenez Martinez*, 83 F.3d 488, 496 (1st Cir. 1996); *United States v. Rodriguez*, 60 F.3d 193, 196 (5th Cir. 1995).

to have been for clothing. He subsequently learned that Titi's "sister" in the United States was actually Bola and, shortly thereafter, that Titi was definitely sending drugs to her. He then began regularly assisting Titi with dealing drugs and helping her package drugs inside suitcases containing clothing. On one occasion, he was promised the profits from 350 grams of the kilo of heroin that Titi had packaged in a suitcase. Titi paid him $5,000 before he returned to Nigeria in late 1994 and also sent an automobile and expensive watch to him in Nigeria. In Nigeria, he met Bola, who told him that she had problems with Titi's lying to her and asked him to help her deal drugs in 1995 when she planned to return to America and he to Bangkok.

The statement discusses in some detail Emezuo's dealings with Bola in 1995 and the ways in which he assisted her, and that he owned 300 grams of a one-kilogram shipment of heroin. The statement also mentions the names of several associates and the roles they played and admits that Bola wired funds directly to Emezuo, some of which he was to disburse to Bola's source in Bangkok. Emezuo admitted to acting as an intermediary between Bola and her Bangkok source during another transaction in 1995 involving 1300 grams of heroin and to receiving the money from Bola for this transaction. Emezuo mentioned an additional transaction, again involving 1300 grams of heroin, which was thwarted when the courier destroyed the drugs after her room (but, in an oversight, not her person) had been searched by Drug Enforcement Administration agents in New York. He mentioned one further transaction in September 1995 with which he was not involved, but which resulted in the arrest of Bola in possession of drugs which she had imported from Nigeria.

Apparently believing that this written statement was a truthful and complete proffer to the government, on May 14, 1998, Emezuo filed a *pro se* "motion for safety

valve" with copies to his trial counsel and the probation officer, stating that he had provided the government and his lawyer with the necessary information regarding his involvement in the conspiracy. (Sep. App. of Pet'r, Tab 4, App. E.) However, the Sentencing Recommendation prepared by the probation officer stated that Emezuo "does not appear to qualify for the two-level reduction under the safety valve provision (5C1.2) because he has not proffered to the government." (Sentc'g Recomm. at 2.[3]) At sentencing, the district court adopted the factual findings and guideline range set out in the Presentence Investigation Report (PSR), including the PSR's recommendations as to Emezuo's "marginal" but sufficient acceptance of responsibility, his ineligibility for the safety valve and that no upward adjustment was warranted for obstruction of justice. Emezuo was sentenced to 145 months, which included a six month downward departure from the bottom of the applicable range as determined by the district court.

Emezuo was unsuccessful on a direct appeal of his ineligibility for the safety valve reduction, *see United States v. Hamzat*, 217 F.3d 494, 501 (7th Cir. 2000), and he filed the present motion *pro se* on November 29, 2000. In his motion, he claimed that his trial counsel was ineffective for failing to secure him a proffer session with the government that he argues would have resulted in his eligibility for the safety valve reduction. The district court denied Emezuo's § 2255 motion and denied an evidentiary hearing, both of which decisions are appealed.

It is clear from the district court's opinion that it did not interpret Emezuo's *pro se* motion as a claim that his lawyer failed to effectively proffer Emezuo's written statement independently of a plea bargain, but rather as "in essence"

---

[3] References to "Sentc'g Recomm." refer to the Sentencing Recommendation.

claiming that his lawyer was ineffective because he "failed to facilitate *a plea agreement that would have allowed him to give a proffer* to the government and to be eligible for a reduction under the safety valve provision." (Pet'r Br. at B7 (emphasis added).) As Emezuo's appellate counsel now makes clear, it is the former interpretation— not to mention his trial counsel's failure to indicate Emezuo's willingness to submit to a safety valve interview—that is truly the essence of Emezuo's claim. This is borne out in the government's opposition to Emezuo's *pro se* § 2255 motion, in which it argued that Emezuo's lawyer had decided not to proffer for strategic reasons, particularly because the parties disagreed over the quantity of drugs for which Emezuo was responsible—a disagreement that the government claimed could have exposed him to an enhancement for obstruction of justice. (Gov't Resp. to Def.'s Pet. for Relief Pursuant to § 2255 at 8.) It therefore appears from a review of the record that Emezuo's ineligibility for the safety valve at the time of sentencing was based on his failure to provide *any* information to the government. Because the district court apparently misconstrued Emezuo's ineffective assistance claim, it did not discuss his written submission to the probation officer in deciding to deny Emezuo a hearing, let alone make any findings as to the truthfulness or completeness of the statement. (Pet'r Br. at B7-B9.)

When considering a claim of ineffective assistance of counsel, we review the district court's conclusions of law *de novo*, its factual findings for clear error and its denial of an evidentiary hearing for abuse of discretion. *United States v. Traeger*, 289 F.3d 461, 470 (7th Cir. 2002). The district court's interpretation of the safety valve provisions is also reviewed *de novo. United States v. Ramirez*, 94 F.3d 1095, 1099 (7th Cir. 1996). Determinations of credibility by the fact-finder are reviewed for an abuse of discretion. *United States v. Edun*, 890 F.2d 983, 988-89 (7th Cir. 1989). In

order to determine whether the failure to proffer Emezuo's written statement to the government constituted ineffective assistance, we must evaluate whether Emezuo was prejudiced by his counsel's performance and, if we find that he was, whether his counsel's performance was deficient. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## II.

The prejudice prong of *Strickland*'s familiar test requires that a defendant demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Emezuo argues, as he must, that the information in his written statement is complete and truthful, and that it would have fulfilled the proffer requirement of the safety valve provision if it had been provided to the government. Moreover, he claims that his trial counsel should have indicated to the government that Emezuo was willing to submit to a safety valve interview. He claims prejudice because, if he had received the safety valve reduction, his Guidelines range would have been 121-151 months instead of 151-181 months, and he argues that the district court would have again sentenced him at the bottom of the range and favored him with the same six month downward departure, resulting in a 115 month sentence instead of the 145 months he received.[4]

---

[4] We note with respect to the six month downward departure that this court recently held under nearly identical circumstances that

(continued...)

The government responds that Emezuo cannot demonstrate prejudice for two reasons: (1) even if the information contained in his written statement had been proffered to the government, it contained omissions and inconsistencies that prevented it from being truthful and complete, so he would not have been eligible for the safety valve in any case; and (2) his sentence of 145 months was within the Guidelines range he claims should have applied, so he cannot demonstrate a reasonable probability that he would have received a shorter sentence even if he had received the two-level safety valve reduction. (Gov't Br. at 26, 29-30.)

## A. Emezuo's Written Statement

Our analysis begins with the government's critical first contention: that the written statement, intended as a proffer, was not truthful and complete. Upon review of the statement, we conclude on the basis of the record and the district court's findings at sentencing that it was not an entirely truthful proffer. Emezuo therefore cannot show that he would have been entitled to the safety valve adjustment even if the written statement had been proffered to the government, so he is not entitled to relief under § 2255.

The safety valve provision was enacted by Congress in order to benefit defendants who wished to cooperate with the government but, because they were less culpable, or because their more culpable colleagues had already cut deals with the authorities, they did not have new or useful information to provide. *United States v. Arrington*, 73 F.3d

---

(...continued)

"departures from the correctly established guideline range based merely on a defendant's status as a deportable alien are not authorized." *United States v. Meza-Urtado*, 351 F.3d 301, 305 (7th Cir. 2003).

144, 148 (7th Cir. 1996). Thus, in order to qualify for the two point safety valve reduction pursuant to U.S.S.G. § 2D1.1(b)(6), a defendant must meet the five criteria set out in U.S.S.G. § 5C1.2(a):

(1) The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) The offense did not result in death or serious bodily injury to any person;

(4) The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Though it is undisputed that Emezuo met the first four criteria, his trial counsel did not ensure that Emezuo's information was proffered to the government prior to sentencing. (Sentc'g Recomm. at 2.) It is Emezuo's burden to prove that he would have been eligible for the safety valve reduction if

the proffer had been correctly made. *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002).

The government claims that Emezuo's written statement "would have fallen far short of being a complete and truthful account of his role," (Gov't Br. at 27), but under these circumstances, the statement's truthfulness is more significant than the statement's completeness. Emezuo indicated at his sentencing hearing that he had been willing to "talk to the prosecutor," (Sentc'g Tr. at 16),[5] and he contends on appeal that his trial counsel's ineffectiveness also encompassed the failure to indicate this willingness. We have previously held that a *truthful* written statement combined with an indication to the government of willingness to submit to a safety valve interview satisfied the safety valve disclosure requirement, because the government cannot complain of incompleteness if it refuses to allow the defendant to finish telling his story. *United States v. Brack*, 188 F.3d 748, 763 (7th Cir. 1999). Thus, the truthfulness of Emezuo's written statement (and any additional information provided in the follow-up interview) is the key issue: if Emezuo's proffer was not truthful, his counsel's failure to ensure that it be provided to the government was clearly harmless.

The resolution of this key issue hinges on a single point in dispute: whether, as Emezuo contends, he was initially duped into assisting Titi, or whether, as the government contends, he must have known all along that she was smuggling heroin because he had previously been involved with dealing drugs with a different source.[6] (Pld'g Tr. at 71.)

---

[5] References to "Sentc'g Tr." are to the Sentencing Transcript.

[6] The government's purported comparison of the plea colloquy with Emezuo's written statement sheds little light on our evaluation of the statement for several reasons. First, despite both the government's and the PSR's observations to the contrary, the

(continued...)

In determining that 8 kilograms of heroin smuggled into the United States by the conspiracy in late 1993 were attributable to Emezuo, the probation officer had to evaluate the credibility of both of these claims, and she resolved this disputed fact in the government's favor.[7] On the other hand, she determined that Emezuo was not responsible for a two-kilo shipment of heroin in January 1994 that the govern-

---

(...continued)
statement appears to include the information which is claimed to be lacking. (Pet'r Br. at 11-12.) But even if it doesn't, these "omissions" could have been corrected in a safety valve interview, as they apparently were in a follow-up interview with the probation officer. *See Brack*, 188 F.3d at 763. This also assumes that these pieces of information had not already been successfully proffered during the plea colloquy. *See United States v. Schreiber*, 191 F.3d 103, 108 (2d Cir. 1999) ("The safety valve statute does not specify the form, place, or manner of disclosure.").

As for Emezuo's alleged procurement of heroin for the present conspiracy, (PSR, Attach. 1 at 2), the record is unclear whether the government has stood by this argument or not. Is the government merely claiming that Emezuo's previous involvement with another heroin source "put[ ] . . . into substantial doubt" his claims of ignorance with respect to his initial dealings with Titi, (Pld'g Tr. at 71), or is it also claiming that Emezuo actually procured heroin for the present conspiracy? (PSR, Attach. 1 at 2.) Since the government's brief on appeal does little to clarify this point, (Gov't Br. at 28), and since the resolution of this issue is not necessary to our decision, we decline to evaluate it.

[7] This may also explain why the probation officer found Emezuo's acceptance of responsibility to be "marginal" and why she noted that "he has *basically* admitted to the conduct" and that "the defendant tends to minimize his conduct." (PSR at 11 (emphasis added).) Moreover, since the disputed fact relates to the conduct comprising the offense of conviction, it supports the government's argument that if Emezuo's trial counsel had made the proffer and forced the issue, "he risked prompting the government to argue that Emezuo did not deserve the two-point reduction for acceptance of responsibility." (Gov't Br. at 31.)

ment contended should be included. (PSR at 7-8.) This indicates that she was open to finding the government's version to be insufficiently supported by the evidence, and her rejection of Emezuo's version thus seems more plausible and not arbitrary.

In adopting the findings of the probation officer at sentencing, including the recommendation as to the amount of heroin for which Emezuo was responsible, the district court also implicitly accepted the government's argument that Emezuo was aware that Titi was smuggling heroin from the inception of his involvement with her. While it is possible that the district court may have decided this issue differently if it had been squarely presented for resolution via a safety valve proffer whose truthfulness was disputed by the government, we have previously held that the district court's findings of fact "would easily withstand clear error review." *Hamzat*, 217 F.3d 494, 501. Thus, we cannot conclude that the record supports a finding that Emezuo's written statement was entirely truthful, and his trial counsel's failure to proffer this statement to the government was therefore harmless. We need not explore whether Emezuo's trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 697.

## B. Sentencing Range

Although our conclusion that Emezuo's proffer was not entirely truthful is dispositive of his appeal, the government's second argument why Emezuo was not prejudiced also merits discussion because it was apparently accepted by the district court, yet it is not supported by the law of this circuit. The government argues that Emezuo cannot demonstrate prejudice because his sentence is already within the Guidelines range Emezuo argues should have applied, and he cannot prove that the judge would have given him a shorter sentence than the one he received. The

district court appears to have accepted this argument in finding that Emezuo could not establish prejudice, stating that "his sentence still falls within the allowable range." (Pet'r Br. at B9-B10.)

But we have held that "where two Guidelines ranges overlap . . . , the technical dispute over which range to apply may be left unresolved . . . [a]s long as it is reasonable to conclude that the same sentence would have been imposed regardless of the outcome of the dispute over which range to apply." *United States v. Howard*, 179 F.3d 539, 545 (7th Cir. 1999). We had previously found it reasonable to conclude that the same sentence would have been imposed regardless of which Guidelines range applied when the sentencing judge had specifically said as much at the sentencing hearing, *see id.*, and when the district court indicated that, if a lower sentencing range had applied, he would have sentenced the defendant to the high end of that range, *see United States v. Utecht*, 238 F.3d 882, 890 (7th Cir. 2001). Other circuits have found it unreasonable to conclude the same sentence would have been imposed "[w]here it appears . . . that the district court chose a sentence because it was at the low end of the applicable Guidelines range." *United States v. Williams*, 891 F.2d 921, 923 (2d Cir. 1989), citing *United States v. Vasquez*, 874 F.2d 250, 252 (5th Cir. 1989). We, too, have held that

> "[a] sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error." Although the sentence that the district court selected in this case is within the correct as well as the incorrect Guidelines range, we must remand unless we have reason to believe that the error did not affect the district court's selection of a particular sentence. *Williams v. United States*, 117 L. Ed. 2d 341, 112 S. Ct. 1112, 1120-21 (1992); *United States v. Panadero*, 7 F.3d 691, 698 n.4 (7th Cir. 1993). Here, the district court chose the lowest possible sen-

> tence within the erroneous range. We have no reason to believe that it would not have selected an even lower sentence if given the opportunity to do so.

*United States v. Wallace*, 32 F.3d 1171, 1174-75 (7th Cir. 1994).

Here, too, the district court selected the lowest possible sentence within the erroneous range and then departed downward by an additional six months. Although there was no statement of reasons given at sentencing why the lowest end of the range was the appropriate starting point, the district court characterized Emezuo's sentence as "a very, very long sentence to begin with" and noted that Emezuo was "getting as minimal a sentence as I legally can give you." (Sentc'g Tr. at 14, 17.) Thus, although the district court noted in denying Emezuo's § 2255 motion that it *could have* imposed the same sentence even in the lower sentencing range, we cannot conclude that it *would have* reimposed the same sentence, rather than, as Emezuo argues, adopting the same reasoning as earlier and imposing a sentence at the bottom of the lower range. If sentencing within the lower range had been warranted, the mere fact that Emezuo's earlier sentence was already within that range would not have supported a finding that Emezuo did not suffer prejudice.

## Conclusion

Although the resolution of this appeal comes down to an implied finding of fact made by the probation officer and adopted by the district court, it is a finding that we will not disturb. Emezuo has failed to prove that his proffer was entirely truthful, and so the district court must be

AFFIRMED.

No. 02-1263                                          15

A true Copy:

    Teste:


_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*