RIPPLE, Circuit Judge,
dissenting from the denial of rehearing en banc.
In the few short weeks since the Supreme Court’s decision in United States v. Booker, - U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the courts of appeals across the Country have produced a significant number of opinions setting forth a broad spectrum of approaches designed to implement the Supreme Court’s decision. The panel opinion before us sets forth the holdings of the first generation of those various cases and then presents a variation of one. Today’s panel opinion thus initiates the second generation of post -Booker opinions, variations on the themes set forth in the first generation of opinions. No doubt, before the vernal equinox arrives, these second generation opinions will produce a further variation and a third generation of opinions will be upon us. Complexity will complicate complexity. The companies that produce the reports of our opinions will be delighted; the notes and comments editors of the Nation’s law reviews will have sufficient fodder for all of next year’s crop of aspiring editors — and the federal courts will raise serious doubts about their capacity to govern.
Is this the course that the Supreme Court expected would follow its pronouncement in Booker? Are we to attribute to the Court a desire that the Nation’s intermediate courts of appeals develop elaborate and diverse approaches to Booker ’s holding. There are, no doubt, times when a Supreme Court decision is intended to encourage intermediate appellate courts to address unresolved issues and for the intermediate courts’ resolution of those issues to percolate to the Supreme Court. But the situation presented by Booker is hardly one. The entire federal criminal justice system came to a standstill in anticipation of the Court’s decision in Booker. Now that the Court has ruled, it is time to implement its decision — immediately and forthrightly.
As a threshold matter, then, we ought to pause and reflect on the reason for this plethora of diverse approaches, churned out by the courts at a pace that obviously has precluded the sort of reflection and open collegial consultation that ought to be part and parcel of the process of deciding an appellate case.
One possible reason for such a judicial behavior pattern would be the novelty of the Supreme Court’s decision. However, we are not confronted with such a once-in-a-century situation. The situation before us is not unique: We simply must implement a decision that holds that the sentencing procedure employed in the federal courts is unconstitutional because it denies the right to a jury trial. We are asked to see that individuals illegally sentenced to prison are relieved of the burden of serv *486 ing a sentence' imposed under such an unconstitutional system.
In my view, the approach formulated by the panel suffers from two basic infirmities. First, as Judge Kanne convincingly points out, the abbreviated “quick look” required of a district court is hardly a substitute for the sentencing process that the Supreme Court now has said is mandated by our Constitution., Until the district court undertakes a new sentencing process — cognizant of the freedom to impose any sentence it deems appropriate as long as the applicable guidelines range and the 18 U.S.C. § 3553(a) factors are considered — the district court cannot accurately assess whether and how its discretion ought to be exercised. The panel’s holding requires the court to pre-judge and to pre-evaluate evidence it has not heard. Sentencing after Booker will raise subtle issues as to how much emphasis ought to be given to particular facts and circumstances. This task can be accomplished competently only after hearing witnesses and seeing the evidence. In short, what the panel substitutes for the usual judicial reaction to an unconstitutionally-imposed sentence is a process that simply is inadequate to the task.
In all too many instances, the process scripted by the panel will serve as an invitation for the district court to give only a superficial look at the earlier unconstitutionally-imposed sentence. The constitutional right at stake hardly is vindicated by a looks-all-right-to-me assessment by a busy district court. Indeed, if we wanted to drag our collective judicial feet and ensure that the Supreme Court’s decision had minimal impact (a motivation I certainly do not attribute to my colleagues), it would be difficult to come up with a better device than -the one crafted by the panel opinion.[1]
In addition' to mandating an enfeebled mechanism for the correcting of the unconstitutional process identified by the Supreme Court, the panel opinion also has introduced into our decisions a new rigidity with respect to our formulation of the plain error doctrine — a rigidity that I fear my colleagues will regret long after the “Booker cases” are a faded memory.
The Supreme Court has recognized that “[njormally, although-perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the ‘affecting substantial rights’ prong of Rule 52(b).” United States v. Olano, 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis supplied). However, we have never required this specific showing of prejudice in circumstances in which the error has denied the defendant a constitutionally-mandated process and when the outcome of that process cannot be known until the process actually takes place. Rather, in such contexts, we have ordered resentencing when a distinct possibility exists that the error influenced the district court’s selection of a particular sentence. For instance, we have remanded sentences that fell in the overlap of an erroneously applied sentencing range and the correct guidelines range, “ ‘unless we have reason to believe that the error did not affect the district court’s selection of a particular sentence.’ ” Emezuo v. United States, 357 F.3d 703, 711 (7th Cir.2004) (quoting United States v. Wallace, 32 F.3d 1171 (7th Cir.1994)); see United States v. Sofsky, 287 F.3d 122, 125 (2d Cir.2002) (relaxing the otherwise rigorous plain error review standards to correct unobjected error because the error related to sentencing and the defendant lacked prior knowledge that *487 the erroneous sentencing condition would be imposed); United States v. Plaza-Garcia, 914 F.2d 345, 347-48 (1st Cir.1990) (vacating sentence under the plain error doctrine that fell within incorrect and correct guidelines range because the sentence “may well have been influenced by the [erroneous] sentencing recommendation”); see also United States v. Reyna, 358 F.3d 344, 351 (5th Cir.2004) (presuming prejudice when the district court failed to allow defendant to allocute, because of the nature of the right and the difficulty of proving the violation affected a specific sentence); United States v. Adams, 252 F.3d 276 (3d Cir.2001) (same).
The panel decision today offers a superficially pragmatic, but not a principled, basis for adopting its novel approach to plain error analysis. Particularly troubling, in terms of its long-term impact, is the delegation to the district court of our judicial responsibility to evaluate plain error on an independent basis. See United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (“A defendant must thus satisfy the judgment of the reviewing court .... ”). Indeed, even when viewed as a “pragmatic” response to Booker’s, mandate, the panel’s hastily constructed procedure falls on its own sword. The panel never tells us what it plans to do with cases in which retirement, disability or death has made impossible consultation with the district judge who imposed the unconstitutional sentence. Even when such consultation is possible, our case tracking computer programs will get quite a workout, and we certainly shall see another New Year come and go before this situation no longer impedes our regular work. The Supreme Court has told us that one of the reasons for plain error review is to reduce the burden on the judicial system. See Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). It is indeed difficult to see how the odyssey on which the panel now sends us will do anything other than tie us in knots.[2]
Booker requires a simple, direct remedy to those harmed by the unconstitutional procedure of former times. We would best serve justice by implementing the Supreme Court’s mandate quickly and efficiently. I respectfully dissent.

. Cf. United States v. Williams, 399 F.3d 450, 460 (2d Cir.2005) (defending a truncated pro-éedure partially on the ground that it avoids administrative burdens).

. Cf. Williams, 399 F.3d at 461 n. 15 (criticizing the procedure scripted by the panel opinion as introducing a "needless yo-yoing between the appellate court and the district court”).